RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0220p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

MARTHA PAIGE,

          *Plaintiff-Appellant,*

       *v.*

KIMBERLY COYNER, In her individual and
official capacities; BOARD OF
COMMISSIONERS, WARREN COUNTY;
WARREN COUNTY PORT AUTHORITY,

              *Defendants-Appellees.*

No. 09-3287

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 08-00518—S. Arthur Spiegel, District Judge.

Argued: January 15, 2010

Decided and Filed: July 26, 2010

Before: BOGGS and GILMAN, Circuit Judges; McCALLA, Chief District Judge.[*]

_____

## COUNSEL

**ARGUED:** Stephen A. Simon, TOBIAS, KRAUS & TORCHIA, Cincinnati, Ohio, for
Appellant. Mark H. Troutman, ISAAC, BRANT, LEDMAN & TEETOR, LLP,
Columbus, Ohio, for Appellees. **ON BRIEF:** Stephen A. Simon, David Torchia,
TOBIAS, KRAUS & TORCHIA, Cincinnati, Ohio, for Appellant. Mark H. Troutman,
Steven G. LaForge, ISAAC, BRANT, LEDMAN & TEETOR, LLP, Columbus, Ohio,
Vladimir P. Belo, Natalie Trishman Furniss, BRICKER & ECKLER, LLP, Columbus,
Ohio, for Appellees.

      GILMAN, J., delivered the opinion of the court. BOGGS, J. (pp. 17-18),
delivered a separate concurring opinion. McCALLA, Chief D. J. (pp. 19-21), delivered
a separate opinion concurring in the judgment.

_____

[*] The Honorable Jon P. McCalla, Chief United States District Judge for the Western District of
Tennessee, sitting by designation.

1

—————————————

**OPINION**

—————————————

RONALD LEE GILMAN, Circuit Judge.  Martha Paige sued a county official and two county entities pursuant to 42 U.S.C. § 1983, which provides a cause of action against those who violate a person's constitutional rights while acting under color of state law.  Paige alleged that after she raised concerns at a public hearing regarding a proposed interstate-highway project, the county official retaliated against Paige by calling her employer and saying false things about her speech.  Because Paige's employer was involved in the development of commercial properties in the county, the employer allegedly fired Paige as a result of the county official's call.  Paige contends that the county official intended this result when making the call, thereby violating Paige's First Amendment right of free speech.

One of the county entities filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  It argued that Paige had failed to state a claim for which relief can be granted because she did not allege any "state action" by her employer, as purportedly required under § 1983.  The district court granted the motion and sua sponte dismissed the case against the remaining two defendants.  For the reasons set forth below, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.

## I.  BACKGROUND

**A.     Factual background**

Paige is a long-time resident of Warren County, Ohio, where she owns a large farm with her husband.  In March 2002, she began working as an accountant for Bunnell Hill Development Company, which privately develops commercial properties in the area, including Warren County.

When Paige learned of a proposed road-construction project in 2005 that would interfere with her property, she and her neighbors attended several public meetings to oppose the project and to voice their opinions regarding Warren County's development plan. Paige was subsequently elected president of the Residents' Association of West Central Warren County (Residents' Association). Bunnell Hill was allegedly aware of Paige's "civic activities" and never objected to them.

On August 6, 2007, Paige attended a public meeting held by the Warren County Port Authority, which was established to encourage economic development in Warren County. She had concerns about a proposed interstate-highway project in nearby Monroe, Ohio for which the Port Authority would be a source of funds. Before the meeting started, Kimberly Coyner approached Paige. Coyner is Director of the Warren County Office of Economic Development and Executive Director of the Warren County Port Authority. When Coyner spoke to Paige, Coyner incorrectly identified Paige's employer as Henkle Schueler and Associates (a company affiliated with Bunnell Hill) and asked how long Paige had been employed there. Paige corrected Coyner and informed her that Paige had been working for Bunnell Hill for more than five years. No one else overheard this exchange between Paige and Coyner.

Once the meeting began, several residents spoke up about the proposed interstate project, including Paige. When Paige spoke, she identified herself as a resident of Warren County and as president of the Residents' Association. She alleges that at no time during her public comments did she identify herself as an employee of Bunnell Hill or "give any indication whatsoever that her remarks should be associated with anyone other than herself in her capacity as private citizen and president of the Residents' Association."

During her remarks, Paige briefly explained the concerns that some members of the Residents' Association had about the impact of the interstate project. At the close of her comments, Paige asked the Board "whether in analyzing a potential development project they should consider if the project benefits the residents of Warren County."

While Paige was speaking, she noticed Coyner's allegedly negative reaction to Paige's inquiry. The interstate project discussed at the meeting was the first project that Coyner had brought to the Port Authority for its consideration and was one of the first major projects that she had initiated as Director of the Warren County Office of Economic Development.

According to Paige, as part of "a plan to retaliate against Ms. Paige for the public comments she made at the hearing," Coyner called Bunnell Hill on August 13, 2007—one week after the hearing—and spoke with Greg Bartley, the Executive Vice President of Bunnell Hill. Coyner falsely told Bartley that Paige had publicly introduced herself at the Port Authority hearing as an employee of Bunnell Hill and had spoken negatively about the establishment of the Port Authority. Coyner then "sought clarification of Bunnell Hill's commitment to development in the region."

Three days after the call, on August 16, 2007, Bunnell Hill management met with Paige and terminated her employment. To justify her termination, they specifically referenced Coyner's false allegation that Paige had used Bunnell Hill's name to oppose development at the public meeting of the Port Authority.

## B.    Procedural history

In August 2008, Paige filed her § 1983 complaint against Coyner in both her individual and official capacities, as well as against the Warren County Port Authority and the Warren County Board of Commissioners (the body that established the Port Authority). Paige also raised state-law claims of defamation and tortious interference with her employment relationship.

The Port Authority filed a motion to dismiss in September 2008, arguing that it was immune from liability for the state-law claims under Ohio law and that Paige's § 1983 claim was deficient because her alleged injury—the loss of her job—was caused by her private employer, not by anyone acting under color of state law. Paige conceded that her state-law claims against the Port Authority were barred, but otherwise opposed the motion.

In February 2009, the district court granted the Port Authority's motion to dismiss. It dismissed the state-law claims against the Port Authority under Ohio immunity law and the § 1983 claim against the Authority under federal law because Paige had not demonstrated that the actions of Bunnell Hill in firing her were attributable to the state. The court then sua sponte dismissed with prejudice all claims against both Coyner and the Board for the same reasons, except that it declined to exercise supplemental jurisdiction over the state-law claims against Coyner in her individual capacity. These latter claims were dismissed without prejudice. Paige has timely appealed.

## II. ANALYSIS

### A.     Standard of review

When deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, the district court must construe the complaint in the light most favorable to the plaintiff and must accept all the factual allegations contained in the complaint as true. *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). In order to survive a Rule 12(b)(6) motion to dismiss, Paige's complaint need contain only "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This court reviews de novo the district court's grant of such a motion. *Lambert*, 517 F.3d at 438-39.

### B.     Application of *Blum v. Yaretsky*

The crux of Paige's § 1983 claim is that Coyner, the Port Authority, and the Board retaliated against Paige for exercising her First Amendment rights by making false statements to her employer with the intent of having Paige fired. In order to succeed on a retaliation claim, a plaintiff such as Paige must establish the following elements:

> (1) that the plaintiff was engaged in a constitutionally protected activity;
> (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was

motivated at least in part as a response to the exercise of the plaintiff's constitutional rights.

*Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998); *see also id.* at 682, 687 (holding that a rape victim's § 1983 claim against the local sheriff for releasing confidential and personal details of her rape after she publicly criticized the sheriff's handling of the case could survive a Rule 12(b)(6) motion to dismiss).

There is, however, an additional requirement common to all § 1983 claims: "a plaintiff must allege that [s]he was deprived of a right secured by the Federal Constitution or laws of the United States *by a person acting under color of state law*." *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992) (emphasis added); *see also Romanski v. Detroit Entm't, L.L.C.*, 428 F.3d 629, 636 (6th Cir. 2005) ("Section 1983 makes liable only those who, while acting under color of state law, deprive another of a right secured by the Constitution or federal law."). This so-called state-actor requirement becomes particularly complicated in cases such as the present one where a private party is involved in inflicting the alleged injury on the plaintiff.

Coyner, the Port Authority, and the Board do not dispute that they are state actors with regard to their own actions. If, for example, the Port Authority had fired one of its *own* employees as a result of the employee speaking at a public hearing, the state-actor requirement would surely be met. Instead, they argue that they cannot be held legally responsible for the actions of Bunnell Hill, a private employer, which ultimately inflicted the harm on Paige. They contend, therefore, that the district court was correct in holding that Paige needed to meet either the nexus test or the state-compulsion test laid out by the Supreme Court in *Blum v. Yaretsky*, 457 U.S. 991, 1004-05 (1982), in order to adequately plead state action.

In *Blum*, a class of nursing home residents sued the Commissioners of the New York Department of Social Services and the Department of Health. They alleged that the practice by various private nursing homes of transferring residents to facilities with lower levels of care without giving the residents an opportunity to challenge the decision violated the residents' constitutional right to the due process of law. The plaintiffs

sought to hold the state defendants liable because the nursing homes were state-regulated.  Even though *Blum* was a Fourteenth Amendment case, as opposed to an action brought under § 1983, the Court employed an identical analysis to determine whether the state-action requirement was satisfied.  *Id*. at 1009 n.20.  The analysis is the same because the Fourteenth Amendment prohibits only states (as opposed to private entities) from depriving individuals of due process.  *Id*. at 1002-03; *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982) (explaining that the "under color of state law" requirement for § 1983 is the same as the "state action" requirement of the Fourteenth Amendment).

The Supreme Court in *Blum* described the residents' suit as one that "seeks to hold state officials liable for the actions of private parties" and ultimately concluded that the state-action requirement was not satisfied.  *Blum*, 457 U.S. at 1003.  It used three tests to determine whether the actions of the nursing homes should be attributed to the state.  First, where "there is a sufficiently close nexus between the State and the challenged action of the regulated entity[,] . . . the action of the latter may be fairly treated as that of the State itself."  *Id*. at 1004 (citation omitted).  The nexus test assures that "constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains."  *Id*. (emphasis in original).  Second, "a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State."  *Id*. This is the so-called state-compulsion test.  Finally, state action will likely be present if "the private entity has exercised powers that are traditionally the exclusive prerogative of the State."  *Id*. at 1005 (citation and internal quotation marks omitted).

None of these tests were satisfied in *Blum* because the decisions to transfer residents were solely "medical judgments made by private parties according to professional standards that are not established by the State."  *Id*. at 1008.  For the purposes of the instant case, we note that the Court undertook this state-action analysis in *Blum* even though the suit was against *state officials* who would typically be

considered state actors if they had taken the challenged actions themselves.  The Court was clear, however, that the residents were "challenging decisions by the nursing homes in which they reside to discharge or transfer patients without notice or an opportunity for a hearing" and *not* "particular state regulations or procedures."  *Id.* at 993, 1003. Furthermore, the residents' "arguments concede[d] that the decision to discharge or transfer a patient *originates* not with state officials, but with nursing homes that are privately owned and operated."  *Id.* at 1003 (emphasis added).

The district court in the case before us applied the nexus and state-compulsion tests from *Blum* to conclude that Paige had not alleged any state action by Bunnell Hill, her employer.  Paige contends, however, that *Blum* does not apply to retaliation cases such as hers where the suit is solely against state officials and where *the officials themselves* took the action that allegedly violated constitutionally protected rights.  That is, Paige does not argue that Bunnell Hill was a state actor or that its action in firing her should be attributed to the state, but that Coyner, as a state actor, violated Paige's rights when Coyner called Bunnell Hill and gave false information in retaliation for Pagie's comments at the Port Authority hearing.

*Blum* turned not on who was sued—i.e., whether the named defendant was a public official or a private entity—but on who took the constitutionally impermissible action.  In *Blum*, the action that allegedly deprived the residents of their constitutional rights was the private nursing homes' transferring residents without due process—an action taken by private parties.  The Court in *Blum* therefore had to determine whether that action could be attributed to the state.  Here, Paige alleges that Coyner's phone call giving the false statements to her employer was the state action taken in retaliation for Paige's exercise of her First Amendment rights.  *Blum* is therefore distinguishable from the instant case.

This court has previously applied the *Blum* tests only where a § 1983 action was brought against a private entity.  *See, e.g.*, *Campbell v. PMI Food Equip. Group, Inc.*, 509 F.3d 776, 779, 783-84 (6th Cir. 2007) (manufacturing plant); *Lansing v. City of Memphis*, 202 F.3d 821, 825, 828-34 (6th Cir. 2000) (nonprofit festival organizer);

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 180 F.3d 758, 762 (6th Cir. 1999) (private, voluntary athletic association), *rev'd on other grounds*, 531 U.S. 288 (2001); *Adams v. Vandemark*, 855 F.2d 312, 313-14 (6th Cir. 1988) (nonprofit development corporation); *Crowder v. Conlan*, 740 F.2d 447, 449-50 (6th Cir. 1984) (private hospital).

Indeed, this court has described *Blum* as "defin[ing] the contours of the state action doctrine with respect to nominally private parties." *Brentwood Acad.*, 180 F.3d at 762 (explaining that *Blum* "reviewed a challenge to a private nursing home's transfer and discharge policy" and concluded that "the nursing home was not a state actor" because "being subject to state regulation does not by itself convert the actions of a private organization into state action"); *see also Bier v. Fleming*, 717 F.2d 308, 310-11 (6th Cir. 1983) (stating that the party charged in a § 1983 case "must be a state official, *or* he must have acted together with or received significant aid from state officials" (emphasis added)).

Because the state actors in *Blum* took *no* action themselves, the Supreme Court necessarily had to determine whether the state should be obligated to shoulder the blame for solely private action. Here, the state actor (Coyner) initiated the entire chain of events. And, as discussed in more detail below, Coyner will be potentially liable for the result of that chain of events—Paige's firing—only if that result was a reasonably foreseeable consequence of Coyner's phone call. *See Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 609 (6th Cir. 2007) (holding that a state action in a § 1983 claim is liable for the reasonably foreseeable consequences of his conduct). Coyner could thus be liable not because the firing itself was state action, but because a jury might find that the firing was a reasonably foreseeable consequence of the action taken by Coyner. In other words, once there has been state action (here, the phone call), the proper test for the scope of responsibility for events flowing from that action is reasonable foreseeability, not how close the nexus is between the private actors and the state actors.

The district court thus erred in applying *Blum* to the instant case and by framing the issue as whether Bunnell Hill's actions in firing Paige could be fairly attributed to the state. *Blum*'s tests are limited to suits where the private party is the one allegedly responsible for taking the constitutionally impermissible action. Here, Coyner is clearly a state actor because she works on behalf of local government entities, and Paige contends that Coyner violated § 1983 when Coyner called Bunnell Hill and made false statements in retaliation for Paige's criticism of the proposed interstate project. Paige has therefore properly alleged state action.

**C.      Elements of a First Amendment retaliation claim**

Moving now to the heart of Paige's § 1983 cause of action, we must determine whether Paige's complaint alleges sufficient facts that, taken as true for the purposes of Rule 12(b)(6), would satisfy the three elements required to establish a First Amendment retaliation claim. These three elements are analyzed in detail below.

**1.      *Constitutionally protected activity***

In order to succeed on a retaliation claim, a plaintiff must first allege that she "was engaged in a constitutionally protected activity." *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998). Paige contends that she engaged in protected activity by attending the Port Authority hearing and voicing her opinion concerning a proposed interstate project. The First Amendment clearly protects the right to speak publicly about such matters. *See Glasson v. City of Louisville*, 518 F.2d 899, 904 (6th Cir. 1975) (noting that "freedom of expression upon public questions is secured by the First Amendment"). Paige has thus stated sufficient facts to satisfy the first element of *Bloch*.

**2.      *Adverse action***

Next, a plaintiff must allege that "the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity." *Bloch*, 156 F.3d at 678. As discussed above, Paige contends that, by calling her employer and making false statements regarding Paige's public speech, Coyner took an adverse action against her. The injury that Paige

alleges was caused by this adverse action was her termination from Bunnell Hill. Losing one's job and accompanying benefits is certainly severe enough to deter a person of ordinary firmness from speaking at public meetings. *See Harris v. Bornhorst*, 513 F.3d 503, 519 (6th Cir. 2008) (holding that the adverse action element was met because the state official "actually prevented [the § 1983 plaintiff] from securing the career he wants," and that "[a] more effective deterrent is difficult to imagine").

The second part of this element—causation—is the closest issue in the case. To survive a motion to dismiss, Paige's allegations must plausibly establish that Coyner is legally responsible for Paige losing her job. This requires Paige to establish both cause in fact and proximate cause. *See Powers*, 501 F.3d at 608 ("Traditional tort concepts of causation inform the causation inquiry on a § 1983 claim.").

"Cause in fact is typically assessed using the 'but for' test, which requires us to imagine whether the harm would have occurred if the defendant had behaved other than it did." *Id*. Bunnell Hill had been aware of Paige's various civic activities, including attending meetings and expressing opinions about development projects in Warren County, but had never previously objected. Paige had been employed by Bunnell Hill for over five years. Most importantly, Bunnell Hill specifically cited the information relayed in Coyner's call as a reason for terminating Paige. The temporal proximity between Coyner's allegedly retaliatory call and Paige's termination also suggests that, but for the call, Paige would have remained employed by Bunnell Hill. Paige has therefore alleged sufficient facts to establish as plausible that, but for Coyner's call, she would not have been terminated by Bunnell Hill.

Turning now to proximate cause, we have explained that the concept deals with determining the proper scope of responsibility:

> [C]ourts have framed the § 1983 proximate-cause question as a matter of foreseeability, asking whether it was reasonably foreseeable that the complained of harm would befall the § 1983 plaintiff as a result of the defendant's conduct. Even if an intervening third party is the immediate trigger for plaintiff's injury, the defendant may still be proximately liable, provided that the third party's actions were foreseeable.

*Id*. at 609.　Under *Powers*, Bunnell Hill's intervening act of terminating Paige's employment does not relieve Coyner of liability if Coyner reasonably should have foreseen that the company would fire Paige as a result of the call.　*See id*. (holding that the chain of causation in a § 1983 suit against a public defender for his failure to move for an indigency hearing was not broken by the judge's failure to hold such a hearing *sua sponte*); *Kerman v. City of New York*, 374 F.3d 93, 126-28 (2d Cir. 2004) (holding that a hospital's decision to admit the plaintiff for psychiatric observation did not break the chain of causation in a § 1983 suit against the police officer who took him there); *Warner v. Orange County Dep't of Prob.*, 115 F.3d 1068, 1074 (2d Cir. 1997) (holding that the acts of Alcoholics Anonymous (AA) in offering religious content and the acts of the sentencing judge in imposing attendance at AA meetings as a condition of probation did not break the chain of causation in a § 1983 suit against the probation department that recommended the attendance at such meetings as a probationary condition).

The case most directly on point in this circuit is *Harris v. Bornhorst*, 513 F.3d 503 (6th Cir. 2008).　Harris had been convicted of murder, but the conviction was ultimately reversed on appeal.　He then brought suit against the prosecutor and the county for malicious prosecution and other claims.　After the suit was filed, Harris sought enlistment in the Marine Corps.　When the Marine Corps contacted the prosecutor to inquire about Harris's murder conviction, the prosecutor said that the conviction was reversed only because of a technicality and specifically mentioned Harris's malicious prosecution suit.　The Marine Corps subsequently declined to enlist Harris.　Harris then added a § 1983 claim to his lawsuit, alleging that the prosecutor had retaliated against him for exercising his constitutional right to bring the original suit. The right to seek redress in court is a protected activity under the First Amendment.　*See id*. at 518-19.

This court reversed the district court's grant of summary judgment in favor of the defendants on the First Amendment retaliation claim and remanded the case for further proceedings.　*Id*. at 520, 523.　Even though the Marine Corps was the intervening actor

taking the action that harmed Harris, the court accepted for summary judgment purposes the allegation that the prosecutor's comments to the recruiter had caused Harris's injury. *Id*. at 519. The facts in the instant case are strikingly similar. Although Bunnell Hill took the action that ultimately injured Paige, this will not absolve Coyner of liability if such a result was a reasonably foreseeable consequence of Coyner's call to Bunnell Hill. *See Powers*, 501 F.3d at 609.

Paige alleges that Coyner intended for Paige to lose her job when Coyner made the phone call. Similarly, Paige alleges that Coyner knew that Bunnell Hill, as a developer active in Warren County, would not want to jeopardize its working relationship with Warren County officials. If Coyner's goal was to have Paige fired from Bunnell Hill, a jury could find that such a result was reasonably foreseeable. *See Kerman*, 374 F.3d at 127 ("[F]oreseeability is normally an issue of fact . . . ."). Paige has thus alleged sufficient facts on proximate cause at this early stage of the proceedings to satisfy the second element of *Bloch* and to avoid the dismissal of her complaint as a matter of law.

### 3.        *Retaliatory motive*

The final element of a First Amendment retaliation claim requires the plaintiff to show that "the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights." *Bloch*, 156 F.3d at 678. A defendant's motivation for taking action against the plaintiff is usually a matter best suited for the jury. *Harris*, 513 F.3d at 519-20. And Paige alleges several facts that would allow a jury to find that Coyner was motivated at least in part by Paige's comments criticizing the proposed interstate project. For example, Coyner had a personal interest in the project because it was one of the first major projects that she was in charge of as the Director of the Warren County Office of Economic Development. Coyner also had a visibly negative reaction to Paige's critical comments during the Port Authority hearing. Finally, one could reasonably infer from the fact that Coyner made allegedly false statements about Paige's speech during the call to Bunnell Hill that Coyner was acting with a retaliatory motive.

Proof of Coyner's retaliatory motive may also arise from the fact that she called Paige's employer only one week after Paige spoke at the hearing. Temporal proximity between the protected conduct and the adverse action by the state actor "alone may be significant enough to constitute indirect evidence . . . to create an inference of retaliatory motive." *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (citation and internal quotation marks omitted) (holding that on remand the district court should consider whether the temporal proximity between an inmate's grievances against a prison officer and that officer's charges against the inmate alone could create a genuine issue of material fact that the officer was acting with a retaliatory motive when he brought the charges against the inmate).

Coyner is of course free to rebut these allegations on summary judgment or at trial by establishing that she was motivated by any number of nonretaliatory goals. In *Worrell v. Henry*, 219 F.3d 1197 (10th Cir. 2000), for example, the court suggested that public officials who were being sued in a First Amendment retaliation case after they pressured the district attorney to not hire a person who had previously testified for the defense in an important criminal case could be motivated by a desire to "provide[] effective law enforcement" rather than retaliating against the plaintiff for his testimony. *Id*. at 1213.

Similarly, Coyner could have been motivated purely by business concerns rather than a desire to punish Paige for speaking out negatively against one of Coyner's proposed projects. She might have simply wanted to ensure that Bunnell Hill would adequately perform if it were awarded any development contracts or, more generally, that Bunnell Hill was fully behind the Port Authority and the Board's goals of developing the area. In this way, Paige might have just been doing her job—i.e., directing development in the area. But because Paige's complaint alleges facts that, if taken as true, could establish that Coyner was acting with a retaliatory motive, Paige has satisfied the third and final element of *Bloch*. She has therefore alleged sufficient facts to have her complaint survive a Rule 12(b)(6) motion to dismiss.

This is not to say that public officials lack the right to inquire into the motivations and goals of their colleagues or constituents. What they cannot do, however, is take action in order to punish a citizen for exercising his or her constitutional rights. That is, "an act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper." *Bloch*, 156 F.3d at 681-82 (citation and internal alteration omitted). Thus, although Coyner's call to Bunnell Hill would be proper if prompted by purely business or governmental concerns, it would run afoul of § 1983 if prompted by retaliatory motives.

**D.      Liability of the Port Authority and the Board of Commissioners**

The final issue on appeal concerns the potential liability of the Port Authority and the Board of Commissioners. They argue that Paige's retaliation claim against them should be dismissed as a matter of law because Paige did not allege that Coyner acted according to an unconstitutional policy or custom when she called Bunnell Hill. "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

A § 1983 plaintiff seeking to hold a municipality liable must therefore allege that the particular injury complained of flowed from the execution of the municipality's policy or custom. *Garner v. Memphis Police Dep't*, 8 F.3d 358, 361, 363-64 (6th Cir. 1993). But policy or custom does not have to be written law; it can be created "by those whose edicts or acts may fairly be said to represent official policy." *Monell*, 436 U.S. at 694; *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) ("[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."). Moreover, the alleged adverse action need not be part of a pattern because "municipal liability may be imposed for a single decision by municipal policymakers." *Pembaur*,

475 U.S. at 480 (holding that a county prosecutor's action in ordering deputy sheriffs to enter a business establishment in violation of the Fourth Amendment was sufficient to impose municipal liability on the county under § 1983 because the prosecutor was acting as the final decisionmaker for the county).

Paige's complaint alleges that Coyner "acted pursuant to the official policies of Defendants Warren County Board of Commissioners and Warren County Port Authority in that Defendant Coyner has final policy making authority" for those entities. Under *Monell* and *Pembaur*, Coyner's authority to create policy for the Board and the Port Authority means that her actions can represent official policy. Although this factual issue will need to be resolved at summary judgment or at trial, Paige's allegation is sufficient to meet the requirements of *Monell* at the pleading stage of this case.

In sum, Paige has alleged all that she needs to in order to state a claim for relief under § 1983 against all three defendants: state action by Coyner, the three elements of a First Amendment retaliation claim, and a policy or custom by the Port Authority and the Board. There undoubtedly remain many close factual questions that will need to be resolved by a judge or jury on remand. In her complaint, however, Paige has alleged sufficient facts to state a § 1983 claim against all three defendants that "is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The district court thus erred in dismissing her claims under Rule 12(b)(6) by misapplying the Supreme Court's decision in *Blum v. Yaretsky*, 457 U.S. 991 (1982).

### III.  CONCLUSION

For all of the reasons set forth above, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.

---

**CONCURRENCE**

---

BOGGS, Circuit Judge, concurring.  I agree with the conclusion of my fellow judges that, under our circuit's precedent, this case must be remanded for further consideration, as Paige's complaint should not have been dismissed at the Rule 12 (b)(6) stage, especially given the stringent standard for such a dismissal.  I generally agree with Judge Gilman's analysis of our proper procedure under *Blum v. Yaretsky*, rather than Judge McCalla's view.

I write separately primarily to indicate that I believe that it remains rather problematic  whether our retaliation analysis in *Bloch v. Ribar*, 156 F.3d 673 (6th Cir. 1998), could survive a searching analysis under First Amendment doctrine.  By that, I mean that the three elements of a cause of action for First Amendment retaliation, as properly set out by Judge Gilman, *ante*, at 10-15, are wholly congruent with the following situation being an actionable tort:

1.      Person A makes some silly and outrageous statement;

2.      Person B, who is a state actor, publicly blasts Person A, causing third parties to realize that Person A is a chowderhead and take action against that person; and

3.      Person B's speech was a response to Person A's speech.

When put that starkly, without qualification – which is what *Bloch* itself seems to do – the First Amendment implications should be somewhat obvious.  *See Bloch*, 156 F.3d at 681-82 ("[A]n act taken [at least in part as a response to] the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper.") (quoting *Matzker v. Herr*, 748 F.2d 1142, 1150 (7th Cir. 1984)).

To make it less abstract, let us take this wholly hypothetical example: the dean of a public law school discovers one morning that one of her students has, in a private e-mail, said something that could be construed as racist. The dean issues a public statement condemning the student (perhaps characterizing the e-mail falsely, perhaps not)[1] which causes the student to lose a previously promised position as a law clerk or law-firm associate. And, of course, the dean's attack was motivated by the student's speech. In such a hypothetical situation, it would appear that *Bloch* would make the dean potentially liable for damages under § 1983 and would, at the very least, allow litigation against the dean to proceed past the Rule 12(b)(6) stage.

However, since this does appear to be the state of our circuit's law at this point, I concur in Judge Gilman's opinion and in the judgment of the court, and leave such potential problems to be sorted out in the first instance upon remand.

---

[1] I note that another recent decision of this court analyzes a claim similar to the one in this case without requiring that the purportedly actionable speech be false or defamatory – merely that it "threaten [the plaintiff's] economic livelihood directly or indirectly." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 724 (6th Cir. 2010).

---

**CONCURRING IN THE JUDGMENT**

---

McCALLA, Chief District Judge, concurring.  The majority correctly determined that Paige's complaint alleged sufficient facts that satisfy the three elements required to establish a § 1983 retaliation claim.  *See Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998).  Additionally, the majority correctly concluded that Paige properly alleged that she was deprived of a right "secured by the Constitution or laws of the United States" and that the deprivation was committed by an individual acting "under the color of state law." *See Wolotksy v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992).  Thus, I concur in the judgment of the majority opinion.  I write separately because I believe that Plaintiff satisfied the under-color-of-state-law requirement by meeting the state compulsion test from *Blum v. Yarestsky*, 457 U.S. 991 (1982).

The Supreme Court has stated that "[l]ike the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) (quoting *Blum*, 457 U.S. at 1002) (internal quotations omitted).  "The purpose of this requirement is to assure that constitutional standards are invoked only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains." *Blum*, 457 U.S. at 1004.  The majority determined that it was not necessary to undertake a *Blum* analysis because it found that Coyner's phone call to her employer, by itself, was sufficient state action to satisfy the under-color-of-state-law element of Paige's § 1983 claim.

I would agree with the majority's conclusion regarding the application of *Blum* had Paige not sought damages for her loss of employment.  "Faithful adherence to the 'state action' requirement . . . requires careful attention to the gravamen of the plaintiff's complaint." *See Blum*, 457 U.S. at 1003.  In her complaint, Plaintiff specifically seeks damages that directly and proximately resulted from her loss of employment.  It is undisputed that Plaintiff was ultimately terminated by Bunnell Hill, her private

employer.  Thus, Paige is seeking to hold state actors liable for the actions of a private employer.  *See Blum*, 457 U.S. at 1003 ("The importance of [the state action requirement] is evident when, as in this case, the complaining party seeks to hold the State liable for the actions of private parties.").  Although Bunnell Hill's intervening act of terminating Paige's employment does not relieve Defendants of liability for her § 1983 retaliation claim, Paige must nonetheless undertake a *Blum* analysis to determine if her alleged injury is properly attributable to Defendants state actors.

A finding that *Blum* applies to the instant case does not end the inquiry.  Paige must still demonstrate that she pled facts sufficient to support a finding of state action under the *Blum* state compulsion test.  The state compulsion test requires that a state actor has "exercised such coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed that of the State." *Blum*, 457 U.S. at 1004.  The district court, in granting Defendants' motion to dismiss, relied on *German v. Fox*, 267 F. App'x 231 (4th Cir. 2008).  In *German*, the Fourth Circuit held that "when the state has coerced a private party to commit an act that would be unconstitutional if done by the state, it means that the state has ordered specific conduct." *Id.* at 234 (citing *Andrews v. Fed. Home Loan Bank*, 998 F.2d 214, 217 (4th Cir. 1993)).  Because Paige did not allege that Coyner directly ordered Plaintiff's termination or otherwise threaten the Port Authority's relationship with Bunnell Hill, the district court found that the allegations in Paige's complaint were not sufficient the meet the state compulsion test.

Neither *Blum* nor Sixth Circuit precedent requires that the state actor's conduct rise to the level of a direct order.  Rather, the state compulsion test requires only that the state exercise "such coercive power or provide such significant encouragement, either over or covert, that in law the choice of the private actor is deemed to be that of the state." *Wolotsky*, 960 F.2d at 1335 (citing, *inter alia*, *Blum*, 457 U.S. at 1004).  In her complaint, Plaintiff alleged that Bunnell Hill had a "close working relationship with key Warren County Officials . . . that it did not want to jeopardize."  Paige also alleged that Coyner's retaliatory phone call to Bunnell Hill sought clarification of Bunnell Hill's

"commitment to development in the region." Taking these allegations as true, I would find that Coyner exercised sufficient coercive power upon Bunnell Hill to trigger state actor status under the state compulsion test.