KAREN NELSON MOORE, Circuit Judge,
dissenting in part and concurring in the judgment in part.
I dissent from Part II.A of the majority opinion because I believe that the facts viewed in the light most favorable to Kelly demonstrate that he has shown that a genuine issue of material fact exists regarding whether the Commissioners improperly considered Kelly’s exercise of his First Amendment rights.
I. FIRST AMENDMENT RETALIATION CLAIM AGAINST THE BOARD
Because I think that Kelly has presented a genuine issue of material fact as to causation and that the Board is not entitled to summary judgment, I dissent from Part II.A and would allow Kelly’s municipal-liability claim to proceed against the Board.
I disagree with the majority opinion’s conclusion that Kelly cannot satisfy the third element of his prima facie case because he has presented only “mere speculation.” Slip op. at 250. Kelly claims that the statements Ariss and Hutzel made to Commissioner South were retaliatory interferences with his employment process and constituted an adverse action because it “would be likely to chill a person of ordinary firmness from engaging in protected activity.” Appellant Br. at 38. Although I agree that Kelly has not shown that Ariss and Hutzel had sufficient influence to affect the hiring process in their own right, I believe that Kelly has presented a genuine issue of material fact regarding Hutzel’s influence- — although the alleged statements to South did not persuade South, it is unclear whether the other members of the Board relied solely on the information obtained through an independent background check conducted by the County’s Human Resources Department (“HR”). As reflected in the resolution to hire Kelly provisionally, the Board had already decided to make Kelly’s employment subject to a background check prior to the alleged interferences by Ariss and Hutzel. If the Board merely followed through with this plan, then any statements made in the interim before the background check was reviewed would not be motivating if the Board ultimately relied on the background check without reference to the additional concerns that Ariss and Hutzel raised. However, this remains a disputed question of material fact.
I believe that a more thorough review of the depositions in the record supports Kelly’s contention of an inference of causation. South testified at her deposition that after the Board passed the resolution to hire Kelly provisionally, she received phone calls from Ariss and Hutzel, and she passed Ariss’s and Hutzel’s general concerns on to HR, telling Dan Arnold, the HR Director, that “I had received phone calls over the weekend from both Mrs. Hutzel as well as Sheriff Ariss encouraging us to make sure we looked thoroughly at the background check, and told him to make sure that we did a thorough one and to bring the background check to our Board when he got it done.” Dist. Ct. Doc. (“Doc.”) 23 (South Dep. at 15-16). The majority opinion neglects this information and also the additional fact that South also stated that prior to the Board’s executive session to discuss Kelly’s background check, she had
*254 shared that information [her conversations with Ariss and Hutzel] with my colleagues [Commissioners Kilburn and Young] right after ... when I spoke with Mr. Arnold to make sure that he did a thorough background check. I think I shared with my colleagues at that time that I had received telephone calls from both the Prosecutor and the Sheriff, and that I had asked Dan Arnold to make sure he did a thorough background check and bring it to us.
Id. at 37-38. According to South’s recollection, the Board received Kelly’s background check from Arnold and discussed it in an executive session with the three Commissioners, Arnold, Bruce McGary (legal counsel), Bob Price (County Administrator), and Frank Young (“F.Young”) present. Id. at 21-22.- There are no minutes for executive sessions. Id. at 51.
Commissioner Kilburn had only vague recollections of the discussions surrounding Kelly’s application, but he remembered that parts of Kelly’s background check indicated that Kelly previously had confrontations with law enforcement and had contacted Commissioner Young’s brother to recommend him for the job, which caused some concern regarding Kelly’s fitness for the position. Doc. 24 (Kilburn Dep. at 14-43). Kilburn stated that Ariss had not talked to him about Kelly’s hiring potential, noting that Ariss “doesn’t have that much clout to [dictate hiring decisions] for any County Department.” Id. at 44.
Commissioner Young had a better recollection of the reasons the Board chose not to hire Kelly, stating that “[essentially what came to light post-hiring were a couple factors that made me change my mind,” including that “upon the background check we saw there had been several incidents involving Mr. Kelly and the police[ and s]everal of those actually involved guns,” that “there has been a conflict with a previous employer here in the County, Hamilton Township Police Force,” and “thirdly, which was not as big a factor but a factor in the back of my mind, Mr. Kelly went and visited my brother, who he knew, and kind of put my brother on the spot, and said ‘Hey, I have one commissioner’s vote and one against me and your brother will decide if I get a job or not.’ ... I personally did not really like that.” Doc. 25 (D. Young Dep. at 11-12). Young reasserted that “honestly, the main thing was seeing someone coming in to work with law enforcement that had problems with an agency inside the County and the fact there had been run-ins with the police, and a big thing was it involved guns in some way.” Id. at 12, 20. Young believed that Ariss had been present in the executive session with the three Commissioners, McGary, and possibly Price, but he could not remember if anyone else was present. Id. at 15-16, 22-23. Young had not discussed Kelly’s potential employment outside of the executive session with anyone other than a quick phone call with his brother when his brother conveyed Kelly’s request for a recommendation. Id. at 18, 20, 26, 30.
Ariss testified that he “did not really get involved other than I passed on to the commissioner — I talked to Pat South and said, T hear Kelly has an application in. Do a background, do a background’ ” because Ariss “ha[d] no authority other than to say, ‘Do a background.’ ” Doc. 26 (Ar-iss Dep. at 45, 49). Ariss also talked to Hutzel because they had the same concerns about Kelly’s background and because Ariss saw Hutzel as “my legal advis- or within the County.” Id. at 47, 49-50. Ariss did not recall talking to anyone else concerning Kelly. Id. at 51-52.
F. Young testified that his recollection of the meeting was that the Commissioners, McGary, and Arnold discussed the results *255 of Kelly’s background check and were concerned that Kelly would not be able to garner the level of trust and confidence required between law enforcement and dispatchers for an effective working relationship. Doc. 28 (F. Young Dep. at 85-89). F. Young testified that after the background check was done, Ariss had contacted him and expressed that he would be concerned if Kelly was a dispatcher, and F. Young “listened to what the Sheriff had to say” because he cared about what the Sheriff had to say “[o]n that particular issue.” Id. at 82-85, 90. But F. Young was not sure whether Ariss or HR had first brought Kelly’s background check issues to his attention. Id. at 106-07.
Kelly testified that his cousin Heath Kil-burn had heard from Commissioner Kil-burn, Heath’s first cousin, that Ariss and Warren Young (Commissioner Young’s brother) “were making things difficult on [Kelly].” Doc. 21 (Kelly Dep. I at 282-89, 478-79). Kelly’s understanding was that “it was the sheriff, Tom Ariss, who I had campaigned against in support of my cousin, Heath Kilburn, who had run for sheriff, had made reference to me committing some type of act with a firearm” and that Warren Young previously had some conversation with Commissioner Young that influenced Young to desire that Kelly not receive a position. Id. Kelly acknowledged that his employment was contingent on a satisfactory drug test and background check, id. at 473-74, but he believed that his background check had no impact on the employment decision, id. at 480-81. Kelly testified that South explained to him that the reason he was not hired “was because of a misdemeanor.” Doc. 22 (Kelly Dep. II at 193,196).
In the employment-discrimination context, this court has recognized that “when a plaintiff challenges his termination as motivated by a supervisor’s discriminatory animus, he must offer evidence of a ‘causal nexus’ between the ultimate decisionmaker’s decision to terminate the plaintiff and the supervisor’s discriminatory animus.” Madden v. Chattanooga City Wide Serv. Dep’t, 549 F.3d 666, 677 (6th Cir.2008). The causal nexus is lacking if the ultimate decision “was based on an independent investigation” and the plaintiff “presented no evidence that the supervisor’s discriminatory animus had influenced the decision.” Id. at 678. The plaintiff must show that “[b]y relying on this discriminatory information flow, the ultimate decision-makers acted as the conduit of the supervisor’s prejudice — his cat’s paw.” Id. (internal quotation marks and alterations omitted); see Shager v. Upjohn Co., 913 F.2d 398, 405 (7th Cir.1990). In this context, the fact that an independent investigation was conducted may not be sufficient to break the causal chain if the evidence supports that the bias-tainted information played an influential role. See Madden, 549 F.3d at 677-79; Noble v. Brinker Int’l, Inc., 391 F.3d 715, 723 (6th Cir.2004) (noting further that the plaintiff “presented no evidence that [the tainted person’s] alleged opinions or attitudes influenced [the ultimate] decision to terminate the plaintiff or otherwise caused the plaintiffs discharge”), cert. denied, 546 U.S. 821, 126 S.Ct. 353, 163 L.Ed.2d 62 (2005). “[M]ere knowledge” of another’s ill-perceptions of a plaintiff, and the plaintiffs “mere speculation” that the ill-perceptions must have been transmitted to the decisionmaker in a way that contaminated the decisionmaker, is insufficient for a causal nexus. Id. at 723-24.
I agree that Kelly has failed to satisfy his burden to survive summary judgment for his first claim related to his campaign activities. No Commissioner cited Kelly’s campaign activities, or the Sheriffs potential dislike for Kelly, as a reason not to hire Kelly permanently. But the record *256 clearly supports that a genuine issue of material fact exists regarding Hutzel’s statements related to Kelly’s suit against Chief Duvelius. The majority fails to acknowledge that both Commissioner Kil-burn and Commissioner Young indicated that they considered Kelly’s past turbulent employment relationship with the Hamilton Township Police Department. Doc. 24 (Kilburn Dep. at 24-25); Doc. 25 (D. Young Dep. at 11-12). Although South did not indicate that she considered Kelly’s prior relationship with the Hamilton Township Police Department, South stated that anything Hutzel may have told her about the incident with Chief Duvelius she had already known from reading newspaper reports, Doc. 23 (South Dep. at 12-13), which negates any causal connection between Hutzel’s statements and South’s decision. But because the background-check documents, other than the criminal-history report, were not included in the record on appeal (and did not seem to be before the district court), the vague statements of Commissioners Kilburn and Young leave open the possibility that they considered not only that Kelly had a negative relationship with the Hamilton Township Police Department because he had quit and had an altercation with an officer, but also that Kelly had previously sued the Hamilton Township Chief of Police. Neither Kil-burn nor Young stated how they acquired their knowledge of Kelly’s relationship with the Hamilton Township Police Department, and a reasonable jury could infer that they learned of the information from South who conveyed that Hutzel had highlighted this relationship. Doc. 23 (South Dep. at 37-38).
Therefore, I would conclude that the district court erred in concluding that Kelly has not presented a genuine issue of material fact and cannot prove his prima facie case of retaliation. I dissent from Part II.A and would reverse the district court’s summary-judgment order and remand for further proceedings.
II. FIRST AMENDMENT RETALIATION CLAIMS AGAINST ARISS AND HUTZEL
I concur in the majority’s judgment in Part II.B upholding summary judgment in favor of Ariss and Hutzel based on Fritz v. Charter Township of Comstock, 592 F.3d 718, 725-28 (6th Cir.2010). I write separately to note that favorable precedents would support Kelly’s claim at the summary-judgment stage if he had provided more information related to Hutzel’s potential direct influence on Commissioners Kilburn and Young. See Harris v. Bornhoist, 513 F.3d 503, 518-20 (6th Cir.) (reversing summary judgment and holding adverse-action causation element satisfied by Marine Corps’s testimony that prosecutor’s statement deterred the Corps from proceeding with plaintiffs employment application), cert. denied, 554 U.S. 903, 128 S.Ct. 2938, 171 L.Ed.2d 865 (2008); see also Paige v. Coyner, 614 F.3d 273, 280-84 (6th Cir.2010) (reversing grant of motion to dismiss and holding that plaintiffs private employer’s specific reference to government officer’s allegations against plaintiff in the private employer’s decision to fire plaintiff satisfied adverse-action causation element in plaintiffs action against the port authority and board of commissioners).