NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0166n.06

No. 10-5543

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

JASON HUMPHREY, KRISTIN HUMPHREY,
Individually and as next friends of their minor
children, LH and MH,

      Plaintiffs-Appellants,

      v.

KIM SAPP,

      Defendant-Appellee,

JAMEY BARTLEY; COMMONWEALTH OF
KENTUCKY, CABINET FOR HEALTH &
FAMILY SERVICES,

      Defendants.

---

**FILED**

***Feb 08, 2012***

LEONARD GREEN, Clerk

---

On Appeal from the United
States District Court for the
Western District of Kentucky
at Louisville

---

**Before:**      **GUY, KETHLEDGE, and WHITE, Circuit Judges.**

    **RALPH B. GUY, JR., Circuit Judge.**    This is a civil rights case brought by the

parents of children subject to a juvenile dependency, neglect and abuse proceeding in the

Kentucky court system. The parents, Jason and Kristin Humphrey, alleged federal

constitutional and state-law tort claims against a social worker, her supervisor, and the state,

claiming that the social worker assigned to their case provided false sworn testimony to the

state court, which led to the children's temporary removal from the home. On appeal, the

Humphreys assert that the district court erred in dismissing claims brought against the social worker. Finding that absolute immunity does not bar the claims, we reverse the judgment of the district court.

**I.**

As alleged in the Humphreys' complaint, on April 27, 2008, Jason Humphrey was alone at home with his two minor children—one-month-old "M.H." and 18-month-old "L.H." M.H. suffered a head injury in an accidental fall. After M.H. was examined by an emergency room physician, hospital representatives advised the Humphreys to have her examined at Kosair Children's Hospital in Louisville, KY (Kosair). The Hardin County EMS transported M.H. to Kosair.[1]

Defendant Kim Sapp is a social worker with the Department for Community Based Services within Kentucky's Cabinet for Health and Family Services. Following receipt of a medical report describing M.H.'s injuries as potentially non-accidental, Sapp petitioned the Hardin County, Kentucky Family Court for emergency removal of M.H. and L.H. from their parents. The petition, filed April 30, 2008, alleged that M.H. had been the victim of abuse and neglect. Sapp filed a contemporaneous "Emergency Custody Order Affidavit" in the family court. Both forms included Sapp's identical statement of her grounds of belief to support the allegations against the Humphreys. Sapp signed the forms as "affiant." The Humphreys allege the family court's removal of the children from their parents on that same

---

[1]The Humphreys' complaint contains several paragraphs of allegations concerning unnecessary medical tests administered to M.H. at Kosair and alleges that "[o]n information and belief, while it was unknown to Plaintiffs at that time, agents of the Commonwealth were making misleading statements of fact about Jason Humphrey."

day was based upon "false sworn testimony" of Kim Sapp, which the complaint does not specifically identify.[2]

The Hardin County Family Court civil action was not formally adjudicated. Rather, it was "informally adjusted" in September 2008, which the Humphreys assert was a resolution in their favor. The Humphreys allege that "even after the rejection of the Family Court matter and despite the lack of evidence and probable cause Defendants Kim Sapp, Jamey Bartley and the Commonwealth of Kentucky continued their pursuit of Plaintiffs." This allegation apparently refers to Sapp's decision to "substantiate" the claims of abuse against Jason Humphrey after the informal resolution of the claims.[3] Jason Humphrey appealed the substantiation, and a hearing was held by a state administrative hearing officer. The hearing officer recommended reversal of the substantiation, resolving the matter in favor of Jason Humphrey. The Humphreys cite to the hearing officer's decision in their briefing.

The Humpreys filed a two-count complaint in federal district court in April 2009, including claims under 42 U.S.C. § 1983 against Sapp, her supervisor, and the Commonwealth of Kentucky. The Humphreys generally allege in the first count that the defendants' actions were taken "in bad faith and without just and legal cause," and that the "aforementioned conduct" amounted to both an unreasonable search and seizure and a

---

[2]The complaint also asserts that "Kim Sapp advised her supervisor Jamey Bartley of all her actions and he approved." Initially, the Humphreys brought claims against multiple defendants, including Sapp's supervisor. Claims against all other defendants in the case have been dismissed and are not before us on appeal.

[3]If a social worker within the Kentucky Cabinet for Health and Family Services "substantiates" child abuse, and the abuse report is not found to be false or unsubstantiated, the abuser's name is placed on the state's child abuse registry, as prescribed by the federal Child Abuse Protection and Prevention Act, 42 U.S.C. § 5106a *et seq.* ("CAPTA").

deprivation of property without due process of law. The second count alleges violations of state law, which were dismissed by the district court and are not part of this appeal.

Defendants moved to dismiss the complaint, asserting in part that absolute immunity barred the claims against Sapp. The district court dismissed the bulk of the claims on this basis, and dismissed all other federal claims brought against Sapp for the reason that the remaining actions complained of failed to support them. This appeal followed.

**II**.

We are presented in this appeal with the question whether a Kentucky social worker, filing an action in family court, is immune from liability for her statement of the grounds supporting the decision to file that action. The district court determined that under those circumstances the social worker is entitled to absolute prosecutorial immunity, and granted the defendants' motion to dismiss.

We review *de novo* a decision on a Federal Rules of Civil Procedure 12(b)(6) motion to dismiss. *Pulte Homes, Inc. v. Laborers' Int'l Union of N. Am.*, 648 F.3d 295 (6th Cir. 2011). In order to survive a Rule 12(b)(6) motion, the complaint—construed in the light most favorable to the non-moving party—"need contain only enough facts to state a claim to relief that is plausible on its face." *Paige v. Coyner*, 614 F.3d 273, 277 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotation marks omitted)).

The Humphreys present their question on appeal as "[w]hether Appellants' federal civil rights claims are barred by absolute immunity when Appellee made false statements of

fact in an affidavit supporting a Juvenile Dependency, Neglect and Abuse Petition in the capacity of a witness and clearly not in a prosecutorial role, or does the holding of the United States Supreme Court in *Kalina v. Fletcher*, 522 U.S. 118, 129-30 (1997), control." Specifically, the Humphreys contend that Sapp acted improperly in referencing shaken baby syndrome in her affidavit, where Sapp had in fact received information the day before she initiated proceedings with the family court that M.H. was not a shaken baby.[4]   The Humphreys describe Sapp's reference to M.H.'s injuries being consistent with "shaken baby" as "fabricated evidence."   The parties do not dispute that Sapp is absolutely immune from liability stemming from any verbal testimony she is alleged to have given to the family court.

For absolute immunity to apply in a suit brought under 42 U.S.C. § 1983, the function complained of must be one that was entitled to absolute immunity at common law.  *See Kalina*, 522 U.S. at 123.   Although immunity for social workers was not part of that jurisprudence, we have recognized that social workers are entitled to absolute immunity under certain circumstances.  *Holloway v. Brush*, 220 F.3d 767, 774 (6th Cir. 2000).  The district court, at the outset of its opinion, cited *Holloway*, *id.* at 775, for the proposition that "social workers have absolute immunity when acting in the capacity of legal advocates, which includes initiating court proceedings and testifying under oath."  The district court then considered each of the acts alleged in the complaint as to defendant Sapp in determining whether immunity applied to bar the claims.  As noted above, the Humphreys now focus

---

[4]M.H. had apparently undergone a retinal exam prior to the filing, the result of which was normal. This information is included in the written findings of fact by the administrative hearing officer and is not disputed by the parties.  The Humphreys assert the negative test "ruled out" shaken baby syndrome and emphasize that Sapp did not refer to the test in her affidavit(s).

solely on Sapp's affidavit. The Humphreys assert that in making its decision, the district court glossed over the distinction between sworn testimony in court versus the information Sapp attested to in her affidavit, improperly coming to the general conclusion that Sapp was "entitled to absolute immunity for her actions in presenting evidence and 'testifying' to the family court."

Sapp prepared two Commonwealth of Kentucky Court of Justice forms in her handwriting on April 30, 2008. The forms carry the captions "Juvenile Dependency, Neglect and Abuse Petition" and "Emergency Custody Order Affidavit." It appears that the temporary removal of the children from the home was an action authorized by court order pursuant to the form entitled "Emergency Custody Order Affidavit." *See* Ky. Rev. Stat. § 620.060 (authorizing temporary *ex parte* emergency custody orders when the court has reason to believe certain conditions exist, "as supported by affidavit or by recorded sworn testimony.") While Kentucky statutory law does not require that the forms be filed by a social worker such as Sapp, and a county attorney did become involved in the case, there appears to be no dispute that court proceedings were intitiated when Sapp filed the Juvenile Dependency, Neglect and Abuse Petition. *See* Ky. Rev. Stat. § 620.070 (providing that "[a] dependency, neglect, or abuse action may be commenced by the filing of a petition by any interested person in the juvenile session of the District Court").

The two forms referenced above both include an identical handwritten paragraph, which states as follows:

> Dr Curry with UL forensic reported that child's injuries are not consistent with accidental means. [M.H.] has a 1 cm. fracture of the skull that has distorted

the shape of the skull. Further MRI testing has revealed blood throughout the brain—consistent with shaken baby. Upon entering hospital, [M.H.] had rectangular bruising on her arms which natural mom reported to having been there for a few days. See attached.

The attachment states that "[n]atural father, Jason Humphrey and natural mother, Kristen Humphrey reported that Jason Humphrey was the only caregiver present on day of incident. Natural mother, Kristen Humphrey denies that injuries occurred non-accidental and denies possib[i]lity that natural father inflicted injuries."

The Emergency Custody Order affidavit includes language preceding the handwritten paragraph stating that "I, Kim Sapp [filled in by hand], swear or affirm under oath the following statements are true to the best of my knowledge." The neglect and abuse petition states that the "affiant," Kim Sapp, "says" that juvenile M.H. was "neglected" and "abused" as prohibited by enumerated Kentucky statutes, based on certain "grounds of belief." Those grounds are the handwritten paragraph quoted above. The form lists Jason and Kristin Humphrey as "believed responsible" for abuse and neglect, respectively. It then lists the juvenile's address and the affiant's name and address. The reverse side of the form requests additional family information and requires the affiant's sworn signature following the sentence "[a]ffiant states the foregoing allegations are true based upon information and belief." Without a hearing, and based solely on the information contained in these forms, the court issued an emergency custody order which allowed Sapp to take the Humphreys' children into state custody.[5]

_____

[5]The forms were dated April 30, 2008. Upon their filing, a court date was set for May 1 for a temporary removal hearing. It appears that the hearing actually took place on May 2, 2008, with both parents, a county attorney, counsel for each of the parents and the juveniles, Sapp, and a guardian ad litem

The Humphreys emphasize the decision of the administrative hearing officer that resolved the later substantiation matter in Jason Humphrey's favor, which we note was issued months after the April/May 2008 events.[6] Citing to and quoting from that decision, the Humphreys argue that Sapp ignored evidence that M.H.'s injuries were accidental, and that Sapp deliberately withheld evidence of M.H.'s retinal exam, which they assert "ruled out" shaken baby syndrome as a cause of injury. This, the Humphreys assert, constituted the "fabrication" of evidence by Sapp.

*Kalina* , relied on by the Humphreys, stemmed from a criminal case. In *Kalina*, the Supreme Court found that the prosecutor was not absolutely immune from liability for actions she took in personally affirming the truth of statements contained in her certification

---

present. The resulting order gave custody of the children back to their mother and allowed limited visitation by their father, but required that the father vacate the family residence pending further order of the court and that one of the mother's relatives move into the home pending the disposition of the proceedings. The order noted that the father, Jason Humphrey, had stipulated to reasonable grounds of abuse of M.H. and that her sibling was at risk of abuse.

[6]The administrative hearing officer quoted from a written report issued by Drs. Pfitzer and Currie of the University of Louisville School of Medicine, Department of Pediatrics, to the Department for Community Based Services investigative worker Kimberly Sapp on April 29, 2008:

> It is possible that if the child fell six feet onto linoleum floor she could have a skull fracture with associated scalp swelling and underlying subdural hemorrhage. However, the severity (particularly the amount of separation of the fractured bones) of this fracture is significantly more than what we typically see with accidental falls. Further, the bleeding inside her head is not limited to the area of impact. It is scattered throughout the cranium. This implies a more global head injury that [sic] a simple contact fall. Also, given the concerning radiological impression as cited, a thorough investigation is warranted. In addition, there are unexplained rectangular petechial marks on the baby's arm that imply that she sustained some sort of blunt trauma to that area. It is difficult to understand how a child could suck on her own arm and create a rectangular-shaped lesion.

The administrative hearing officer's findings of fact also notes that Sapp filed a document called a "Continuous Quality Assessment" form, which indicated that Sapp was informed the evening of April 29, 2008 that M.H.'s eye exam was normal and that it did not appear to be a case of shaken-baby syndrome.

of evidence that she was presenting to establish probable cause for an arrest warrant. *See Kalina*, 522 U.S. at 131.[7] In its discussion of the issue, the Supreme Court first determined that the deputy prosecutor's acts in preparing and filing related documents (the information and motion for an arrest warrant) were protected by absolute immunity. It then noted that:

> Indeed, except for her act in personally attesting to the truth of the averments in the certification, it seems equally clear that the preparation and filing of the third document in the package was part of the advocate's function as well. The critical question, however, is whether she was acting as a complaining witness rather than a lawyer when she executed the certification "[u]nder penalty of perjury."

*Id*. at 129. Because the act of the deputy prosecutor in question, i.e. giving false attestation, was not a matter of professional judgment but purely the function of a complaining witness, absolute immunity did not apply. *Id*. at 131.

Given the similarity between the *Kalina* prosecutor's function and Sapp's function here, we conclude that absolute immunity does not bar the Humphreys' § 1983 claim against Sapp. The assertions made in Sapp's affidavits, restating evidence gathered from other witnesses, are analogous to those made by the deputy prosecutor in *Kalina*. We are, therefore, unable to distinguish the circumstances of this case from the *Kalina* facts.

Sapp has also presented the alternative defense of qualified immunity. Like absolute immunity, qualified immunity is a bar to suit and should be resolved at the "earliest possible

---

[7]In *Kalina*, the deputy prosecuting attorney signed a "Certification for Determination of Probable Cause," separate and independent of the application for the warrant, certifying that the foregoing was true and correct under penalty of perjury. That certification included the statements, not attributed to any witness, that the defendant—who was alleged to have burglarized a school—had "never been associated with the school in any manner and did not have permission to enter the school or to take any property," and that the defendant had been identified in a photo montage. These statements were not accurate. *Kalina*, 522 U.S. at 121.

stage in litigation." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal citation omitted)). However, we find that under the circumstances presented here, the district court should resolve this issue in the first instance, and we express no opinion on this question.

For the foregoing reasons, the judgment of the district court is **REVERSED** and we **REMAND** for further proceedings consistent with this opinion.