NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0011n.06

No. 09-2425

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

BETH PERKINS,

      Plaintiff-Appellant,

v.

TOWNSHIP OF CLAYTON; ROD SHUMAKER,

      Defendants-Appellees.

---

       /

**FILED**
**Jan 04, 2011**
LEONARD GREEN, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

Before:      MARTIN, NORRIS, and COOK, Circuit Judges.

      BOYCE F. MARTIN, JR., Circuit Judge.  This appeal takes us into the heart of local politics, and what appears to be a bitter dispute between Beth Perkins, the former elected treasurer of Clayton Charter Township in Michigan and the Township's other officials.  Perkins asserts that the Township, and specifically Rod Shumaker, the Township's supervisor, retaliated against her for exercising her First Amendment rights.  However, we hold that none of the Township's actions rise to the level of an adverse action and therefore **AFFIRM** the district court's decision granting the Township summary judgment.

**I.**

      Perkins served as the Township's treasurer from 2000 to 2008.  Friction first began to develop between Perkins and the other board members in 2004 when Perkins discovered that the Township's elected clerk, Sally Lurvey, was using the Township's cellular phone plan to receive

discounted rates for her family. Perkins brought this to the attention of Shumaker, who said that he would take care of it.

However, in 2007, Perkins discovered that Lurvey's family members were still receiving discounted cellular phone plans through the Township.[1] Perkins also discovered that Lurvey's son had contracts for cleaning the Township offices, maintaining the Township computers, and performing other sundry tasks. Perkins again brought these issues to the attention of the Township auditors and Shumaker. Concerned that they were not adequately addressing the problems, Perkins met with a reporter from the *Swartz Creek Journal* in November of 2007 to expose these issues. The newspaper proceeded to carry several articles about these alleged improprieties and quoted Perkins as well as Shumaker. The newspaper had not filed any requests for information under the Freedom of Information Act, but some of the stories also carried details about the funds paid to Lurvey's son, implying that the reporter had viewed Township invoices.

After the *Swartz Creek Journal* published some of these stories, at a regularly scheduled meeting of the Township Board on November 8, the Board unanimously—including Perkins herself—voted to hold a hearing on whether to censure Perkins. Shumaker did not propose the hearing, but it appears that he was the moving force behind it. The motion was based on Perkins' interview with the reporter from the *Swartz Creek Journal* where Perkins allegedly allowed the reporter to view Township invoices on her computer. Shumaker claimed that allowing the reporter

---

[1] The record is not clear and it does not affect the outcome of this appeal, but it does not appear that the Township was actually paying for the service on these additional cellular phone lines. Lurvey's family appears to have been taking advantage of the Township's discount in a way that was, perhaps, detrimental to the cellular phone provider.

to view Township invoices in this manner violated the township's Freedom of Information Act policy. The Township appears to have adopted the censure policy in 1997, but had never before used it. Although Perkins initially voted in favor of holding the censure hearing, she later changed course and voted against it in subsequent meetings. The board rescheduled the censure hearing once or twice, but ultimately never held it.

At some point while the issues regarding the Freedom of Information Act violation were percolating, Shumaker met with the Township auditors and discovered that Perkins had not been performing some of her responsibilities as treasurer. On advice from the Township's counsel, Shumaker filed a complaint for mandamus against Perkins on December 27 in a Michigan state court. The complaint alleges several different duties Perkins failed to perform and that Perkins violated the Freedom of Information Act by disclosing township records to a reporter.

After an evidentiary hearing, the court found for the Township on several of the grounds and issued a mandamus. However, the court found that the Township did not have sufficient evidence to support the other claims. The court also held that the Township's interpretation of the Freedom of Information Act was incorrect and the Act did not forbid Perkins, in her role as treasurer, from voluntarily providing information to the public.

Both sides claimed that they won the mandamus proceeding. The Township appealed the portions of the decision in which the court did not find mandamus appropriate, and also filed a motion for contempt arguing that Perkins refused to comply with the order. Perkins circulated a memorandum to the Board members saying that she won the proceeding, Lurvey had acted improperly, and Shumaker had failed to investigate Lurvey's conduct and retaliated against Perkins

for exercising her First Amendment rights. In response, Shumaker circulated a letter stating that Perkins was in a "state of 'denial' confirmed by [her] fantasy that the Judge ruled 'in [her] favor.'"

The situation between Perkins and Shumaker appears to have rapidly deteriorated from there. Perkins left on medical leave around the time the mandamus issued, did not return to her job as treasurer, and did not attend any additional board meetings.

Perkins recites a litany of actions that she believes were retaliatory and presents an even more exhaustive list of harms that befell her as a result of the Township's and Shumaker's conduct. But, because the Township is a municipality, the district court held that Perkins' only complaints that stem from a Township policy and are properly the subject of a section 1983 lawsuit are those that occurred at regularly scheduled board meetings. This includes the issues surrounding the censure hearing and passing resolutions to pursue the mandamus and contempt actions. The district court held that none of these actions rise to the level of an adverse action sufficient to state a claim for First Amendment retaliation and granted the Township summary judgment. The district court also granted Shumaker summary judgment holding that he is entitled to qualified immunity because no constitutional violation had occurred.

## II.

### A.      Standard of Review.

"The Sixth Circuit reviews de novo a district court's grant of summary judgment." *Wimbush v. Wyeth*, 619 F.3d 632, 636 (6th Cir. 2010) (internal quotations omitted). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* "The moving party has the initial burden of proving that no genuine issue of

material fact exists," and the court must draw all reasonable inferences in the light most favorable to the nonmoving party. *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir. 2001). When a motion for summary judgment is properly made and supported, and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). When reviewing a motion for summary judgment, this Court views all evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**B.     The Township's Section 1983 Liability.**

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *see Paige v. Coyner*, 614 F.3d 273, 283-84 (6th Cir. 2010). A municipality may be liable under section 1983 for decisions made by municipal policymakers in appropriate circumstances. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). However, municipal liability only attaches "where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id.* at 481.

Neither party challenges the district court's conclusion that the Township may be held liable for policies enacted by the Board if those policies violated Perkins' rights under the First Amendment. The Township's legislative authority is vested in the Board. Mich. Comp. Laws Ann. § 42.5 (West 2010). Therefore, because the Board possessed final authority to establish the policies

that Perkins is challenging, the Township may be held liable if those policies did infringe Perkins'

First Amendment rights.

In her appellate brief Perkins asserts seventeen different ways that she has been harmed by

the Township's actions after she spoke to the press. However, assuming for the moment that these

harms were retaliatory, the Township may only be held liable for retaliation occurring as a result of

policies enacted by the Board. The district court correctly held that the only policies that could

possibly implicate the Township in this case are the Board's actions (1) relating to the censure

hearing; (2) passing resolutions to pursue the mandamus action; and (3) passing resolutions to pursue

the contempt motion. As the district court concluded, the other actions complained of do not create

municipal liability because they were the result of policies enacted well before Perkins spoke to the

press and were therefore, at most, misused by Shumaker and other Board members. However, such

misuse cannot be imputed to the municipality. *See, e.g.*, *Radvansky v. City of Olmstead Falls*, 395

F.3d 291, 311 (6th Cir. 2005).

## C.     First Amendment Retaliation.

The elements of a retaliation claim are that:

> (1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action
> was taken against the plaintiff that would deter a person of ordinary firmness from
> continuing to engage in that conduct; and (3) the adverse action was motivated at
> least in part by the plaintiff's protected conduct.

*Mezibov v. Allen*, 411 F.3d 712, 717 (6th Cir. 2005) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394

(6th Cir. 1999) (en banc)); *see Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998).

Only the second element is at issue in this appeal. The first prong is not in question as Perkins' right to speak to the press was well established at the time of the alleged wrongdoing. *Cf., e.g.*, *Solomon v. Royal Oak Twp.*, 842 F.2d 862, 865 (6th Cir. 1988). We need not reach the third prong because, as discussed below, we agree with the district court that the Township did not take an adverse action against Perkins.

This Court has held that the harassment necessary to rise to a level sufficient to deter an individual is "not extreme." *See Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005) (remarking that because "there is no justification for harassing people for exercising their constitutional rights, [the deterrent effect] need not be great in order to be actionable"). However, although it is a low standard, the plaintiff must still establish some relatively strong action. *See, e.g.*, *Holzemer*, 621 F.3d at 523-24 (reversing grant of summary judgment for defendants and holding that a reasonable trier of fact could conclude that delay tactics and hostility towards plaintiffs could deter a person of ordinary firmness from exercising right to petition local government officials); *Paige*, 614 F.3d at 281 (holding that terminating an employee is an adverse action sufficiently severe to deter a person of ordinary firmness from speaking at public meetings). The objective inquiry into whether the actions taken against an individual rise to the level of an adverse action is highly dependent on context, and we have repeatedly noted that "prisoners might have to endure more than public employees, who in turn might have to endure more than the average citizen." *Fritz*, 592 F.3d at 724; *see Holzemer v. City of Memphis*, 621 F.3d 512, 523-24 (6th Cir. 2010).

The district court did not separately analyze the policies that Perkins complained of, but relied on this Court's decision in *Mattox* to conclude that Perkins did not suffer an adverse action.

The plaintiff in *Mattox* was an elected member of her local city council and served as the chair of the Public Safety Committee, which was responsible for overseeing the police and fire departments. *Mattox*, 183 F.3d at 517-18. Several firefighters raised concerns with Mattox, who passed them along to the rest of the council. *Id.* at 518. The city investigated these complaints and, for reasons that are not entirely clear, compiled a report that contained critical statements about Mattox that she claimed were in retaliation for initiating the investigation. *Id.* Additionally, the police department produced a video overview of the report. *Id.* The video contained commentary on the process and results, and also contained statements that harmed Mattox and were allegedly made in retaliation for initiating the investigation. *Id.* The video played on local television several times before the 1993 election and Mattox was not reelected to her position. *Id.* Even though she lost her seat on the city council, this Court concluded, *id.* at 522, that the report and accompanying video did not rise to the level of an adverse action.

> As an elected public official, Mattox voluntarily placed herself open to criticism of her actions and views on political matters. A deliberate attempt to discredit Mattox, especially if initiated in retaliation for her actions in investigating the fire department, is perhaps an inappropriate and unfortunate occurrence, but on the facts of this case, it is not the type of "adverse action" against which the First Amendment protects. It is not equivalent to being fired by a government employer for expressing protected views. We do not think it would deter a public official of ordinary firmness from exercising his or her right to speak under the First Amendment. Public officials may need to have thicker skin than the ordinary citizen when it comes to attacks on their views.

Although Perkins attempts to distinguish *Mattox*, the actions that the Township took in this case are very similar to those in *Mattox*, which we held were not adverse. Like Mattox, Perkins attempted to discharge her duties and met with opposition. Through the censure hearing, mandamus

action, and contempt proceedings, Perkins' colleagues took action that undermined her credibility and fitness for the job, and she ultimately did not run for office again. This is exactly what happened in *Mattox*, albeit through a report and not a court proceeding. It is extremely unfortunate that Perkins tried to do what she felt was right and suffered these problems as a result. However, because this suit is against a municipality, the only actions that can form the basis of liability are those relating to the censure hearing, the mandamus proceeding and the contempt proceeding. Although these events were unquestionably unpleasant for Perkins and harmed her, the district court correctly determined that none would dissuade a public official of ordinary firmness from exercising his or her First Amendment rights. Therefore, Perkins' claim for First Amendment retaliation fails because the Township did not take an adverse action against her.

Although Perkins alleges that she suffered more serious harms than the plaintiff in *Mattox*, that is not enough to establish that the Township's actions rise to the level of an adverse action. Some of Perkins' alleged harms as a result of these actions are trivial at best, but it does appear that the Township's actions seriously injured Perkins. However, as part of this contextual inquiry we have noted that "public officials may need to have thicker skin than the ordinary citizen when it comes to attacks on their views." *Mattox*, 183 F.3d at 522; *see Thaddeus-X*, 175 F.3d at 398. As a public official Perkins must tolerate more significant actions taken in response to her exercise of First Amendment rights than an average citizen would before the actions are considered adverse. The Township's actions here, even though they harmed Perkins, were not adverse.

In determining if a public official would be dissuaded by the Township's actions, it is important to keep in mind that Perkins, and other similarly situated public officials, must have had

some compelling reason to speak out. Here, it seems Perkins quite honestly believed that exposing these issues would be beneficial to the community and perhaps her reputation. However, the Township disagreed and took steps to present these issues in a public forum and compel Perkins to perform her job duties. Had the Township done so through a published report, it would not have been an adverse action under *Mattox*. We do not think the prospect of being called to defend one's position and views would dissuade a public official of ordinary firmness from exercising his or her First Amendment rights. Therefore, although the proceedings the Township used to criticize Perkins caused her economic harm and emotional hardship, which we are sympathetic to, they still cannot overcome even the low hurdle of being adverse actions.

Contrary to Perkins' argument that holding against her would give prisoners greater First Amendment rights than public officials, our holding does nothing of the sort. Prisoners do not have great First Amendment rights. However, what is an adverse action when taken against a prisoner is not necessarily adverse to an elected public official. As a consequence of conditions of confinement, otherwise trivial occurrences, such as being served cold soup, could deter a prisoner from exercising his or her First Amendment rights. Although a censure hearing or complaint for mandamus may appear less appetizing and cause more harm than forcing someone to eat cold soup, context matters. Perkins has great First Amendment rights but, none of the Township's actions rise to the level of an adverse action because they would not dissuade a public official of ordinary firmness from exercising his or her First Amendment rights.

**III.**

The district court also held that Shumaker was entitled to qualified immunity, and Perkins has waived the ability to challenge this holding because she did not raise it in her initial brief. Issues that are not presented in the initial brief on appeal are waived. *See* Fed. R. App. P. 28(a)(3), (b); *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 462 (6th Cir. 2003); *Thaddeus-X*, 175 F.3d at 403 n.18 (declining to address defendants' argument that they are entitled to qualified immunity because it was not presented in their opening brief). The only mention of "immunity" in Perkins' opening brief is a footnote stating that Perkins' right to speak to the press is clearly established and "is also why Defendant Shumaker is not entitled to qualified immunity." (App. Br. at 15 n.9.). Perkins cites to four cases after this statement. One out of circuit case discusses immunity, but three of the cases appear to be entirely unrelated to immunity.[2] In response to Shumaker's waiver argument, Perkins does not rely on this footnote but argues that the district court's holding that Shumaker was entitled to qualified immunity was premised solely on there not being an adverse action and therefore Perkins did not suffer a constitutional violation. Therefore because Perkins does not even argue that the issue was raised in her initial brief, she has waived this argument.

Alternatively, to the extent that Perkins has preserved a claim, it would only be the narrow claim that Shumaker would not necessarily be entitled to qualified immunity if we reversed the district court's conclusion and held that Perkins did suffer an adverse action. However, because we agree with the district court's conclusion that Perkins did not suffer an adverse action, there is no

---

[2]Although the brief does not include a citation for the second case and misspells the party's name, it appears Perkins intended to cite *Marohnic v. Walker*, 800 F.2d 613 (6th Cir. 1986).

basis for upsetting the district court's conclusion that Shumaker is entitled to qualified immunity on this ground.

## IV.

Perkins appears to have attempted to act in the best interests of her community and serve the people who elected her by speaking out about what she believed to be serious improprieties in the Township's government. Although the Township, acting through the Board, appears to have taken actions against her that it would not otherwise have done, none of these actions rise to the level of an adverse action because they would not dissuade a public official of ordinary firmness from exercising his or her rights. Perkins appears to have staked out a controversial position and her opponents, rightly or wrongly, appear to have done everything in their power to discredit her. Although she has unquestionably suffered harm as a result of exercising her First Amendment rights, the Board does not appear to have taken any adverse actions against her, and the district court's decision granting the Township and Shumaker summary judgment is therefore **AFFIRMED**.