NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1124n.06

No. 11-3280

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Oct 31, 2012*
DEBORAH S. HUNT, Clerk

KELVIN GREER,                                   )
                                                )
    Plaintiff-Appellant,                        )       ON APPEAL FROM THE UNITED
                                                )       STATES DISTRICT COURT FOR THE
v.                                              )       NORTHERN DISTRICT OF OHIO
                                                )
CLEVELAND CLINIC HEALTH SYSTEM -                )
EAST REGION,                                    )       OPINION
                                                )
    Defendant-Appellee.                         )


Before:  **SUHRHEINRICH**, **STRANCH**, and **DONALD**, Circuit Judges.


**Bernice B. Donald**, Circuit Judge.  Plaintiff-Appellant Kelvin Greer appeals the district court's opinion and order granting summary judgment to Defendant-Appellee Cleveland Clinic Health System - East Region ("the Clinic") on Greer's claims of Family and Medical Leave Act ("FMLA") interference, FMLA retaliation, disability discrimination and failure to accommodate, and denying Greer's motion for partial summary judgment as to the disability discrimination and FMLA interference claims. For the following reasons, we affirm.


I.


A. FMLA Requests


On July 31, 2006, the Clinic hired Kelvin Greer as a part-time Support Services Assistant. His duties included delivering meals to patients, transporting patients and medicine, and a variety

of other tasks. Before he began working at the Clinic, Greer sustained a hand injury that required surgery. The surgery was scheduled for September 2006. Although Greer did not yet qualify for FMLA leave at the Clinic, the Clinic permitted him to take a leave of absence until November 2006. At the end of this leave period, Greer's physician released him to return to work without restrictions. In December 2006, Greer was promoted to a full-time position.

In early 2007, Greer was diagnosed with Type II diabetes, which he controlled by exercising and monitoring his diet and blood sugar. In November 2007, Greer requested to be moved to another floor of the Clinic where he believed the workload to be lighter. Greer indicated that the only response his supervisor, Birce Nash, gave him was "God bless you."

On December 7, 2007, Greer requested FMLA block and intermittent leave for the hand condition for which he previously required surgery. He requested leave from December 7, 2007 through March 8, 2008. On December 11, 2007, Greer's chiropractor certified his medical condition. The certification stated: "[History Right] wrist abscess requiring surgical intervention. Current [symptoms] reflect neurosensory involvement." The chiropractor also authorized two to four weeks of block leave and eight weeks of intermittent leave so that Greer could attend follow-up appointments. From December 7, 2007 to December 17, 2007, Greer took time off of work for his hand condition. During this time, Greer also saw a podiatrist about pain in his foot. The podiatrist diagnosed Greer's foot condition as a diabetic ulcer. The podiatrist treated Greer's foot and indicated the ulcer would heal. Greer said his foot felt normal again, and the podiatrist told Greer that he did not need any additional time off of work.

Although the Clinic approved Greer's FMLA request for block and intermittent leave from December 7, 2007 to March 8, 2008, Greer did not receive notice of the approval. Thus, Greer returned to work on December 17, 2007 unaware that the Clinic approved his FMLA request. On December 26, 2007, Greer submitted a change of address form to the Clinic, which Greer later acknowledged might have listed the wrong address.

According to Greer, his work environment became very stressful. As a result, Greer relapsed into drug use on two occasions, in February 2008 and again in April 2008. On the recommendation of Nash, Greer entered the Clinic's Employee Assistance Program, CONCERN.

In May 2008, Greer's foot condition worsened and he requested additional FMLA block and intermittent leave. Greer's physician provided a medical certification for this request in which he indicated that Greer would be incapacitated for one month. The Clinic approved six weeks of block leave but did not approve intermittent leave. Greer returned from FMLA block leave on June 13, 2008 without any restrictions.

B. Absences from Work

Greer incurred a number of unexcused tardies and absences from work during the course of his employment with the Clinic. Greer claimed that many of his tardies and absences were due to his foot pain and the fact that he had to soak his feet and change his socks regularly. Greer had received a copy of the Clinic's attendance policy during his orientation in July 2006 and later indicated that he knew the attendance procedures at that time. The Clinic assigns points for

violations of its attendance policy. These points can result in corrective actions such as counseling, a Written Corrective Action, a Final Written Warning, suspension, or termination.

On January 30, 2007, for the first time, Greer was a "no-call/no-show" for work. He stated that he tried to call the Clinic but was unsuccessful in this attempt. As a result, the Clinic issued him a Final Written Warning, rather than a suspension as the attendance policy mandates. From June 2007 to April 2008, Greer accumulated 32 attendance points. Under the Clinic's attendance policy at that time, employees could receive a corrective action if their point total exceeded 18 points in a 12-month period. Greer did not incur any attendance points for his time off in December or for his FMLA leave beginning in May 2008. On July 11, 2008, Greer incurred another "no-call/no-show." He claims he intended to go to work, but fell asleep due to strong pain medication. After an investigation of his attendance violations, Greer received a second Final Written Warning, but because his most recent violation was a no-call/no-show, the Clinic's policy required termination of Greer's employment. Greer was terminated on July 28, 2008.

Greer filed suit, alleging FMLA interference, FMLA retaliation, disability discrimination, and failure to accommodate. Greer moved for partial summary judgement on his FMLA interference and discrimination claims. The Clinic moved for summary judgment on all claims on the basis that Greer was terminated solely for his unexcused attendance violations. The district court granted the Clinic's motions for summary judgment and denied Greer's motions for partial summary judgment. Greer timely appealed.

II.

This Court reviews a district court's grant of summary judgment de novo. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 894-95 (6th Cir. 2004). Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The court views the record in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of that party. *Blackmore*, 390 F.3d at 895.

*I. FMLA Interference*

A. Greer's December 2007 request for FMLA block and intermittent leave.

Under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C.A. § 2612(a)(1)(D). An employee is not limited to "block leave" but may be permitted to take the leave intermittently. *See* 29 U.S.C.A. § 2612(b)(1). The Act prohibits an employer from interfering with, restraining, or denying an employee's exercise of, or attempt to exercise, his or her rights under the FMLA. 29 U.S.C.A. § 2615(a)(1).

Greer first argues that because he did not receive notice of the Clinic's approval of his December 7, 2007 FMLA request, he was unaware of time that he could have taken off of work. If he had known that FMLA leave had been approved, he argues, many of the days he was late or

absent would have been protected under the FMLA, and thus the Clinic would not have been permitted to use those days as part of its basis for his termination. His contention is that the Clinic therefore interfered with and restrained him from exercising his FMLA rights pursuant to 29 U.S.C.A. § 2612 when it terminated him for tardies and absences that should have been covered under protected leave.

To establish a *prima facie* case of FMLA interference, Greer must show that (1) he was an eligible employee; (2) the Clinic was an employer as defined by the FLMA; (3) he was entitled to leave under the FMLA; (4) he gave the Clinic notice of his intention to take leave; and (5) he was denied the FMLA benefits to which he was entitled. *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006). If the employee is able to establish a *prima facie* case for FMLA interference, we then apply the *McDonnell Douglas* framework whereby the burden shifts to the employer to provide a nondiscriminatory reason for the alleged interference. If the employer is able to articulate such a reason, the burden then shifts back to the employee to show that the employer's proffered reason is pretextual. *Donald v. Sybra, Inc.*, 667 F.3d 757, 761-62 (6th Cir. 2012) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

The first three elements of Greer's *prima facie* case for FMLA interference are not in dispute. There are, however, disputes as to the fourth and fifth elements. The Clinic asserts that Greer did not satisfy the fourth prong because he did not adequately notify the Clinic of his intention to take leave for his foot condition. In response, Greer contends that his December 2007 FMLA request covered his hand *and* his foot conditions. Greer asserts that because he indicated to the Disability

Plan Office that he was requesting leave due to pain in his hand, blood sugar control problems, and severe pain in his foot on the same day that he submitted his medical certification for his hand, the Clinic received adequate notice of his intent to take leave for both conditions . The Clinic responds that it was not required to approve Greer's FMLA request for his foot condition because Greer failed to submit a medical certification that he required time off for his foot.

Greer provided adequate notice for his hand condition and was subsequently approved for and took FMLA leave for his hand from December 7, 2007 through December 17, 2007. Accordingly, Greer does not have a claim for FMLA interference as it relates to his hand, and thus we must focus on whether Greer gave adequate notice for his intention to take FMLA leave for his foot condition.

When requesting FMLA leave, an employee is required to provide the employer with the necessary details regarding the leave to be taken, and in the case of a medical condition, the employer may require a medical certification from a physician to provide such details. 29 C.F.R. § 825.302(c). Under the Clinic's FMLA policy, medical certification is necessary before leave will be granted. (D.E. #16-7 at 93, 99.) If an employer requires medical certification to take leave under the FMLA, such certification must state when the serious health condition began, the probable duration of the condition, and appropriate medical facts regarding the condition. 29 U.S.C. § 2613(b). Greer's medical certification indicates that his request for FMLA leave was for his hand, not his foot.

If a medical certification requires the aforementioned details regarding a condition, a finding that the condition at issue be specifically named in the certification is implicitly required. Greer's certification for his December 7, 2007 request wholly lacked any mention of his foot condition and thus cannot be deemed sufficient. *See Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 578 (6th Cir. 2007); *see also Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 427-28 (6th Cir. 2004) (finding that plaintiff failed to give notice to his employer for purposes of FMLA leave where the certification failed to mention that his absences were related to his diabetes). Moreover, one's own claim that one cannot work is insufficient notice for an employer that requires medical certification to approve FMLA leave, and thus Greer's assertion that he informed the Disability Plan Office of his foot condition, despite the lack of medical certification for that condition, is unavailing. *See Olsen v. Ohio Edison Co.*, 979 F. Supp. 1159, 1165-66 (N.D. Ohio 1997).

Thus, we find that Greer provided adequate notice for his hand condition only and did not provide adequate notice to the Clinic to take FMLA leave for his foot condition. Accordingly, Greer fails the fourth prong of his *prima facie* case for FMLA interference, precluding the need to address the fifth prong.

B. Greer's May 2008 request for FMLA block and intermittent leave.

Greer also asserts that the Clinic interfered with his FMLA rights when it approved his May 2008 FMLA request for block leave but denied his request with respect to intermittent leave. The

parties do not dispute that Greer satisfies the first four elements of the *prima facie* case. However, the Clinic contends that the fifth element is lacking, a position with which the district court agreed.

Greer insists that his physician certified him for intermittent leave by checking "yes" on the certification form that asked "[w]ill it be necessary for the employee to work only intermittently or work less than a full schedule as a result of the condition." Greer further argues that this certification authorized leave dating back to December 2007 and extended through the treatment he received during his May 2008 FMLA leave. This assertion is incorrect. While Greer was diagnosed with the foot condition in December 2007, he did not request FMLA leave for his foot until May 2008. As previously addressed, each request to the Clinic for FMLA leave must be accompanied by a medical certification, which must state when the health condition for which the employee is seeking leave began. As such, the May 2008 certification form did not authorize leave dating back to December 2007, but merely made the required statement about when Greer's foot condition began. Further, an employee may not take intermittent leave unless agreed upon between the employee and the employer or unless medically necessary. 29 U.S.C.A. § 2612(b)(1). There is no evidence that prior to Greer submitting his May 2008 FMLA leave request, the Clinic agreed to allow him to take intermittent leave.

We thus turn to whether intermittent leave was medically necessary in accordance with the medical certification provided with the leave request. Although Greer's physician certified him for five treatments occurring at five or seven day intervals, the physician specifically indicated that Greer would be incapacitated and unable to work for the duration of his treatments. Incapacitated "is

defined as being 'unable to work at all or . . . unable to perform any one of the essential functions of the employee's position[.]'" *Branham v. Gannett Satellite Info. Network, Inc.*, 619 F.3d 563, 569-70 (6th Cir. 2010) (quoting 29 C.F.R. § 825.115 (2006) (amended 2009)). Given that Greer's position required him to be on his feet and mobile for the duration of his shifts and that his podiatrist indicated Greer would be required to wear a non-weight-bearing cast on his foot, Greer would be unable to perform the essential functions of his position and was thus incapacitated. The physician's recommendation that Greer not work for one month, which was later extended to six weeks, leads to the conclusion that Greer required block leave, not intermittent leave.

Given the foregoing, the district court properly found that no material issue of fact exists as to the denial of intermittent leave with respect to Greer's May 2008 request.

*II. FMLA Retaliation*

Greer next argues that the Clinic retaliated against him for requesting FMLA leave in December 2007 and for taking FLMA leave in May 2008. He contends that the Clinic used the tardies and absences he accrued from December 2007 to July 2008 as a basis for his termination, and that had he been notified of and granted his right to take intermittent leave pursuant to his two requests, those absences would have been covered under the FMLA and would have protected him from an adverse employment action.

Employers are prohibited from "discharg[ing] or in any other manner discriminat[ing] against any individual for opposing any practice made unlawful [under the FMLA]." 29 U.S.C.A. §

2615(a)(2).  To make out a *prima facie* case of FMLA retaliation, a plaintiff must show that (1) he was engaged in a protected FMLA activity; (2) the employer knew he was exercising his rights under the Act; (3) after learning of the employee's exercise of his FMLA rights, the employer took adverse employment action against him; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.  *Sybra,* 667 F.3d at 761 (quoting *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006)).  If the plaintiff establishes a *prima facie* case for FMLA retaliation, we then again apply the familiar *McDonnell Douglas* burden-shifting framework. *Edgar v. JAC Prod., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006).

There is no dispute that Greer was engaged in protected FMLA activity, that the Clinic knew he was exercising his FMLA rights, or that Greer was terminated after returning from FMLA leave. At issue is whether there was a causal connection between Greer's exercise of his FMLA rights and his subsequent termination.

Greer sets forth two arguments in support of a causal connection.  He first argues that his absences and tardies between December 2007 and March 2008 should be covered under the FLMA intermittent leave for which he was approved but never received notice.  In other words, Greer argues that a causal connection is established by virtue of the fact that the Clinic improperly considered the absences and tardies Greer accrued during this time frame as a basis for his termination.  Greer also argues that the close temporal proximity between the exercise of his FMLA rights and his termination raises an issue of causation.  While the district court found that Greer presented insufficient evidence of a causal connection, this court has held that additional scrutiny by one's

employers, temporal proximity, or both, are enough to establish the causal nexus needed to make out a *prima facie* case of FMLA retaliation. *See Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 435-36 (6th Cir. 2009). In light of this precedent, we find that the Clinic's termination of Greer on the basis of absences during the time he was approved for FMLA leave and the close temporal proximity between Greer's exercise of a protected right and his termination are sufficient to establish a *prima facie* case of FMLA retaliation. The Clinic must therefore provide a non-retaliatory reason for Greer's termination.

The Clinic argues that Greer's accumulated attendance points for tardies and absences resulted in a violation of the Clinic's attendance policy and that this violation serves as the sole reason for the adverse employment action. In fact, the Clinic asserts that even if it were to ignore attendance points that Greer accrued during the time he was approved for FMLA leave, Greer would still have accrued twenty-four points in less than twelve months, five points more than necessary to trigger corrective action. Greer does not dispute this point. Having provided a non-retaliatory reason for the termination, the burden shifts back to Greer to show that the Clinic's reason was pretextual.

Greer asserts that pretext is demonstrated by the Clinic's manipulation of its attendance policy so that it could use FMLA protected absences as the basis for his termination. We are not persuaded that the Clinic's consideration of Greer's tardies and absences from December 7, 2007 through March 8, 2008 evidences pretext. Even assuming the absences themselves were entitled to FMLA protection, this would not explain or excuse the altogether separate issue of Greer's "no

call/no shows." Greer failed to notify the Clinic in advance of certain tardies and absences and likewise failed to provide any explanation for them after the fact. Despite Greer's utter lack of communication with the Clinic about his attendance issues, he expects the Clinic to have intuited that they were related to his medical conditions and, further, asks this court to find that the Clinic violated the FMLA in holding Greer accountable for his violations of the Clinic's attendance policy. We decline to do so and find that the district court properly granted the Clinic's motion for summary judgment as to Greer's FMLA retaliation claim.

### III.  Disability Discrimination

#### A.  Greer's diabetes is not a qualifying disability.

Greer brought a state law claim against the Clinic for disability discrimination in violation of O.R.C. § 4112.02(A).  Section 4112.02(A) states that "[i]t shall be an unlawful discriminatory practice [f]or any employer, because of the . . . disability . . . of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."  As the district court stated, in cases of disability discrimination Ohio courts are guided by federal decisions interpreting the Americans with Disabilities Act ("ADA").  Thus, we review Greer's disability discrimination claim in accordance with decisions construing the ADA. *See Holt v. Olmsted Twp. Bd. of Trs.*, 43 F. Supp. 2d 812, 825 (N.D. Ohio 1998).

To establish a *prima facie* case of disability discrimination, a plaintiff must show that: (1) he is disabled; (2) he is otherwise qualified for the position with or without reasonable accommodation; and that (3) he was discharged solely because of his disability. *Sybra*, 667 F.3d at 763. Because Greer's termination occurred in 2008, he does not get the benefit of the ADA Amendments Act of 2008 that defines the term "disability" more broadly.[1] The version of the ADA that applies to Greer defines the term "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C.A. § 12102(2) (2006). "[M]ajor life activities include, but are not limited to, . . . walking, standing, lifting, bending, . . . and working." *Id*. In determining whether a disability substantially limits an individual in a major life activity, we look to the nature and severity of the impairment, its duration or expected duration, and the actual or expected permanent or long-term impact of the impairment. 29 C.F.R. § 1630.2(j)(2) (2006).

Greer claims that his chronic diabetes, with associated complicating factors, severely limits his ability to perform major life activities, such as walking and working. In support of this assertion, Greer cites a number of cases holding that complications from diabetes may constitute a disability. In *Lawson v. CSX Transp., Inc.*, the Seventh Circuit found that a diabetic with severe insulin-dependence was disabled under the ADA. 245 F.3d 916, 923 (7th Cir. 2001). That court also found

---

[1] The ADA Amendments Act of 2008 became effective on January 1, 2009, and this court has held that the amendments are not retroactive. *Milholland v. Sumner Cnty. Bd. of Educ.*, 569 F.3d 562, 565 (6th Cir. 2009).

a plaintiff who had uncontrollable hypoglycemic episodes due to his inability to control his blood sugar was disabled within the meaning of the ADA. *Nawrot v. CPC Int'l*, 277 F.3d 896, 905 (7th Cir. 2002). And this court has held that a diabetic with fluctuating blood-sugar levels that caused irritability so severe that he could not get along with co-workers was disabled. *Gilday v. Mecosta Cnty.*, 124 F.3d 760, 762-65 (6th Cir. 1997). However, these cases involved plaintiffs whose impairments were far more severe in nature, duration, and long-term impact than Greer's. It is true that Greer's chronic diabetes led to his ulcerous foot condition and that left untreated, Greer's foot could become infected and his condition could become life or limb threatening. Courts, however, do not consider what may or could occur with regard to a disability when construing the ADA. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482-83 (1999).[2] Greer received treatment for his foot, and although Greer was restricted from walking and lifting heavy items while on FMLA leave, his doctor approved him to return to work without restrictions on his activities, and even indicated that Greer's foot condition was "terminated." Furthermore, Greer admits that despite the pain in his foot he was able to walk and, in fact, often chose to walk to work rather than drive. At most, Greer's diabetes caused a temporary limitation on a major life activity, and, therefore, it does not give rise to a finding that he was disabled within the meaning of the then applicable provisions of the ADA. *See Roush v. Weastec, Inc.*, 96 F.3d 840, 843 (6th Cir. 1996).

---

[2] The amendments to the ADA reject the requirement in *Sutton* that whether an impairment substantially limits a major life activity is to be determined with reference to the ameliorative effects of mitigating measures. 42 U.S.C.A. § 12101 n. Sec. 2(b)(2). But, as previously stated, these amendments do not apply in this case.

B.  Perceived Drug Use as a Disability.

Greer also contends that the Clinic perceived that his attendance problems were caused by ongoing drug use and, thus, that the Clinic discriminated against him by terminating him on that basis.  He also argues that he was not a current user of illegal drugs when he was terminated. While drug addiction is a recognized handicap under Ohio state law, O.R.C. § 4112.02, to avail oneself of protection under the statute, an employee must (1) have successfully completed a drug rehabilitation program and no longer be engaging in drug use; (2) be participating in a drug rehabilitation program and no longer engaging in drug use; or (3) be erroneously regarded as engaging in illegal drug use. O.R.C. § 4112.02(Q)(1)(b)(i)-(iii).[3]

Greer asserts that he was not currently abusing drugs when the Clinic fired him in July 2008 and that he had participated in an employee assistance program to address his illegal drug use.  While Greer did avail himself of the Clinic's CONCERN program, he admitted during a counseling session on September 10, 2008 that he had relapsed.  He also acknowledged that he had been dishonest during a session on April 2, 2008, when he claimed that he only abused alcohol and that he had been sober for five years.  In Greer's deposition, he further admitted to drinking alcohol and using crack cocaine on February 14, 2008 and April 11, 2008.  The Court of Appeals of Ohio has held that "[c]urrent drug use means that the illegal use of drugs occurred recently enough to justify an employer's reasonable belief that involvement with drugs is an on-going problem." *Corr. Corp. of*

---

[3] The ADA provides the same protections as the Ohio statute. *See* 42 U.S.C.A. § 12114(b).

*Am. v. Youngstown Human Relations Comm'n*, 742 N.E.2d 1177, 1181 (Ohio Ct. App. 2000) (citing *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 856 (5th Cir. 1999)). Furthermore, "[a]n employee illegally using drugs in the weeks and months prior to discharge is a 'current' illegal user of drugs for the purposes of the ADA and Rehabilitation Act." *Corrections Corp.*, 742 N.E.2d at 1181(citing *Shafer v. Preston Mem. Hosp. Corp.*, 107 F.3d 274, 280 (4th Cir. 1997)).

Greer was engaged in illegal drug use approximately three months prior to his termination. Although the Clinic denies terminating Greer on the basis of any illegal drug use, we find that Greer was a "current" drug user within the meaning of the ADA at the time of his termination, and, thus, the Clinic did not *erroneously* regard him as engaging in illegal drug use. Consequently, Greer is excluded from statutory protection and has failed to set forth a *prima facie* case for discrimination on the basis of perceived drug use.

C. Failure to Accommodate

Lastly, Greer claims that the Clinic failed to accommodate his disability by refusing to transfer him to another floor of the Clinic where he perceived the workload to be lighter. An employer has a duty to accommodate an individual with a qualifying disability if the accommodation is reasonable. *See* 42 U.S.C.A. § 12111(8); *see also Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1108 (6th Cir. 2008). But because we find that Greer did not have a qualifying disability, the Clinic had no such duty.

III.

Based on the foregoing analysis, we find that the district court properly granted summary judgment in favor of the Clinic on Greer's claims. Accordingly, we AFFIRM.