NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0223n.06

Case No. 15-5820

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| DIANNE BOILEAU, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE MIDDLE DISTRICT OF |
| CAPITAL BANK FINANCIAL CORP., | ) | TENNESSEE |
| | ) | |
| Defendant-Appellee. | ) | **OPINION** |
| | ) | |
| | ) | |

FILED

Apr 25, 2016
DEBORAH S. HUNT, Clerk

**BEFORE: MERRITT, SUHRHEINRICH, and DONALD, Circuit Judges.**

**BERNICE BOUIE DONALD, Circuit Judge.** Plaintiff, Dianne Boileau ("Boileau"), filed an employment discrimination suit against Defendant, Capital Bank Financial Corp. ("Capital Bank"), alleging violations of the Family and Medical Leave Act (FMLA) and the Americans with Disabilities Act (ADA). The district court granted Defendant's motion for summary judgment, finding that sufficient evidence did not exist to support each element of Plaintiff's claims.

For the reasons expressed below, we **AFFIRM** the district court's decision.

I.

On September 7, 2007, the White House branch of Green Bank hired Boileau as its head teller. As head teller, Boileau's responsibilities included handling customer accounts, creating

work schedules for the other tellers in her branch, handling customer complaints, balancing the vault, and resolving problems with the ATM machine.

Boileau has lupus, a disease which may unpredictably require her to miss work for indefinite periods of time. From May 9, 2011 through May 31, 2011, Boileau was on leave pursuant to the FMLA due to surgery to remove her right salivary gland. The surgery was an attempt to mitigate the complications she experiences due to lupus. She returned to work on June 1, 2011. However, from the date of her return until December 2011, she was on intermittent leave pursuant to her physician's orders.

On January 2, 2012, Boileau began her second period of FMLA leave. She originally notified Capital Bank (which had acquired Green Bank) that she would be able return to work on January 17, 2012. On January 18, 2012, Boileau's physician certified that Boileau was incapacitated. In addition, Boileau's husband submitted several doctor's notes, on her behalf, which deferred her return date. The final note delayed her return date to April 2, 2012. (Page ID # 230.) Along with the notes extending her return date, on January 18, 2012, Boileau's physician certified that due to lymphadenopathy and neck pain, Boileau would be incapacitated for six to twelve months and that, due to those ailments, she would be incapacitated every two to four weeks for periods of one to seven days. Moreover, on January 27, 2012, Boileau's physician certified that Boileau was also presently incapacitated due to lupus and that her condition would cause her to be incapacitated every one to two months, and that the episodes of incapacity would last eight to twelve weeks at a time for the duration of her life.

Capital Bank purchased Green Bank in September 2011. Part of the transition required changes to the computer system and procedures. Both parties dispute whether the transition unduly burdened the employees at Boileau's branch. However, it is undisputed that

complications from her bout with lupus and her other ailments prevented Boileau from being able to work during most of the transition period.

In early March 2012, Sherrie Byrd ("Byrd"), who was branch manager at the White House branch, contacted her supervisor, Regional Executive Darinda Boyd ("Boyd"), to request additional staff. Boyd, in turn, contacted Capital Bank's human resources department to check on Boileau's status. Boyd was informed that Boileau had exhausted her FMLA leave and that she was still physically unable to return to work. On March 14, 2012, Vice President of Human Resources Carolyn Broyles ("Broyles") contacted Boileau and discharged her.

After being terminated, Boileau applied for unemployment. As part of her unemployment application, Boileau's physician certified that Boileau had been under his care and was treated for depression and lymphadenopathy from 10/13/2010 to 4/18/2012 and that, up until 4/18/2012, she was unable to return to work. Moreover, on May 2, 2012, Boileau emailed Broyles and said that "since I cannot work, I am not eligible" for long-term disability. (Page ID # 238.)

On June 6, 2013, Boileau filed this suit, alleging discrimination on the basis of her disability and discriminatory discharge. The district court granted Capital Bank's motion for summary judgment, holding that there was not sufficient evidence in the record to satisfy either her FMLA or ADA claims. This timely appeal followed.

## II.

"We review de novo a district court's grant of summary judgment." *Siggers v. Campbell*, 652 F.3d 681, 691 (6th Cir. 2011) (quoting *Spencer v. Bouchard*, 449 F.3d 721, 727 (6th Cir.2006) (internal quotation marks omitted)). Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Cook v. Caruso*, 531 F. App'x 554, 559 (6th Cir. 2013) (citing *EEOC v. Prevo's Family*

*Market, Inc.*, 135 F.3d 1089, 1093 (6th Cir.1998)). "In considering a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party." *Hall v. Warren*, 443 F. App'x 99, 106 (6th Cir. 2011) (internal quotation marks omitted). The essential question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (internal quotation marks omitted)). "The court considering a motion for summary judgment must consider the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, in the light most favorable to the party opposing the motion." *Adams v. Metiva*, 31 F.3d 375, 378 (6th Cir. 1994) (internal quotation marks omitted).

## III.

On appeal, Boileau argues that the district court erred in granting Capital Bank summary judgment with respect to both her FMLA retaliation and ADA claim.[1] For the reasons detailed below, we disagree.

## A.

"The FMLA entitles an eligible employee to as many as twelve weeks of leave during any twelve-month period if the employee has a 'serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 243 (6th Cir. 2004) (quoting 29 U.S.C. § 2612(a)(1)(D)).

We recognize two recovery theories under the FMLA: the interference theory and the retaliation theory. *See Gates v. U.S. Postal Serv.*, 502 F. App'x 485, 489 (6th Cir. 2012). Under the retaliation theory, an employer cannot discharge or in any other manner discriminate against

---

[1] The district court also granted summary judgment on Boileau's FMLA interference claim. *See* 29 U.S.C. § 2615(a)(1). However, she failed to raise or brief the issue on appeal, therefore, we deem it waived. *See Perkins v. Twp. of Clayton*, 411 F. App'x 810, 816 (6th Cir. 2011).

any individual for opposing any practice made unlawful by the FMLA. *Id.* (citing 29 U.S.C. § 2615(a)(2)). FMLA retaliation claims "impose liability on employers that act against employees specifically *because* those employees invoked their FMLA rights." *Edgar v. JAC Prod., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006).

In analyzing retaliation claims under the FMLA, we employ the burden-shifting test articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001). Under that test, Boileau must first prove a prima facie case of discrimination. *Id.* To make out a prima facie case, Boileau must prove that, (1) she was engaged in a protected FMLA activity, (2) Capital Bank knew that she was exercising her rights under the FMLA, (3) Capital Bank took adverse action against Boileau, and (4) there was a causal connection between the protected FMLA activity and the adverse employment action. *Greer v. Cleveland Clinic Health Sys.-E. Region*, 503 F. App'x 422, 428 (6th Cir. 2012). If Boileau clears that hurdle, the burden shifts to Capital Bank to articulate a legitimate nondiscriminatory reason for terminating Boileau. *Skrjanc*, 272 F.3d at 315. If Capital Bank provides a legally sufficient reason for discharging Boileau, the burden returns to Boileau to prove that Capital Bank's proffered reason was a pretext used to conceal discrimination. *Id.*

In its opinion, the district court assumed, arguendo, that enough evidence was in the record to make out a prima facie case. Citing *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 506 (6th Cir. 2006), the district court determined that Capital Bank provided a nondiscriminatory reason for discharging Boileau—Boileau's physician's conclusion that she could not return to work until April 2, 2016, which would have been after she had already exhausted her FMLA leave. *See id.* (stating that when the medical information known to the employer prior to the

termination decision shows that the employee cannot return to work within twelve weeks, such information suffices as a nondiscriminatory reason to terminate the employee).

The district court went on to conclude that Boileau could not satisfy her burden to prove that Capital Bank's proffered reason was, in reality, a pretext. "A plaintiff may show pretext by demonstrating that the proffered reason (1) had no basis in fact; (2) did not actually motivate the action; or (3) was insufficient to warrant the action." *Tillman v. Ohio Bell Tel. Co.*, 545 F. App'x 340, 349 (6th Cir. 2013). The district court determined that Boileau's claim that Byrd and another teller conspired to terminate her because she used her FMLA leave was wholly unsupported and had no basis in fact. Accordingly, since Boileau could not meet her burden of showing a pretext, it granted summary judgment on Boileau's retaliation claim.

We see no reason not to embrace the district court's analysis, as it relied on facts not in dispute and is fully supported by this court's precedent. However, Boileau makes the following unpersuasive arguments in an attempt to show that the district court erred in holding that there was not a factual dispute as to whether Capital Bank's proffered reason for terminating Boileau constituted a pretext. First, Boileau argues that "she was subjected to harassment . . . by [a co-worker] which was propagated by Byrd." (Appellant Br. 36.) Because Boileau's assertion that Byrd was behind the harassment is unsupported, it does nothing to substantiate her pretext claim. *See Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008) ("Conclusory assertions, supported only by Plaintiff's own opinions, cannot withstand a motion for summary judgment."). Second, Boileau points to Capital Bank's failure to notify her that her FMLA leave was about to expire as evidence that Capital Bank's articulated reason for terminating her was pretextual. That argument is meritless, as Boileau cites no legal authority requiring Capital Bank to warn her that her FMLA leave was about to expire. Third, Boileau asserts that since she requested an

accommodation—which was a request for an additional two weeks off—Capital Bank was on notice that Boileau was ready to return to work. That argument is a nullity. Not only does it do nothing to satisfy her burden of proving a pretext, it also is legally insignificant because Capital Bank relied on Boileau's physician's opinion that Boileau would not be able to return to work until April 2, 2012. *See Edgar*, 443 F.3d at 506. Accordingly, we affirm the district court's summary judgment decision on Boileau FMLA's retaliation claim.

B.

"The ADA prohibits discrimination against any 'qualified individual with a disability,' which is defined as 'an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'" *Dotson v. Pike Cnty. Bd. of Educ.*, 21 F. App'x 368, 369 (6th Cir. 2001) (quoting 42 U.S.C. §§ 12112(a), 12111(8)). To make out a prima facie ADA claim, a plaintiff must prove that: (1) she is disabled; (2) she is otherwise capable of performing the essential functions of the position, with or without reasonable accommodation; and (3) she suffered an adverse employment decision because of her disability. *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 433 (6th Cir. 2014); *but see Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011) (analyzing an ADA claim with a five-element test). "Once the plaintiff has established a prima facie case, 'the burden shifts to the defendant to show that accommodating the plaintiff would impose an undue hardship on the operation of its business.' *Rorrer v. City of Stow*, 743 F.3d 1025, 1039 (6th Cir. 2014) (quoting *Keith v. Cnty. of Oakland*, 703 F.3d 918, 923 (6th Cir. 2013)). "Once the employer discharges this burden of production, the employee must demonstrate that the proffered reason was, in fact, a pretext for unlawful

disability discrimination." *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 417–18 (6th Cir. 2004)

Both parties dispute whether Boileau was "qualified," or capable of performing the essential functions of her job with or without reasonable accommodation. A plaintiff can show that she is qualified by demonstrating that she can perform the essential functions or "fundamental [] duties" of the job. *White v. Interstate Distrib. Co.*, 438 F. App'x 415, 418 (6th Cir. 2011); *see also* 29 C.F.R. § 1630.2(n)(1).

We agree with the district court and hold that Boileau was not qualified under the ADA. Capital Bank contends that regular attendance is part of a head teller's essential job functions. Unfortunately, due to her medical condition, Boileau was not capable of meeting that requirement. According to Boileau's physician, her condition would incapacitate her every one to two months for the duration of her life, with each episode of incapacity lasting from eight to twelve weeks. It also cannot be forgotten that Boileau missed three consecutive months of work prior to her termination. Therefore, the record supports that Boileau was not qualified for the position because she could not meet the attendance requirement.

Boileau disagrees. She alleges that she was qualified and all she needed was a reasonable accommodation—"two weeks of absence." (Appellant Br. 41.) She relies on a Seventh Circuit case, *Byrne v. Avon Products, Inc.*, 328 F.3d 379, 380 (7th Cir. 2003), to support her assertion that "time off may be an apt accommodation." Boileau's argument is misplaced, because even if Capital Bank provided her with an additional "two weeks of absence," her medical diagnosis stated that she would still need to miss prolonged stretches of work indefinitely in the future.

In any event, *Byrne* also does nothing to help her case. *Byrne* goes on to state that "[i]nability to work for a multi-month period removes a person from the class protected by the

ADA." *Id.* As we previously have stated, Boileau's medical condition would prevent her from working eight to twelve weeks at a time, so even under *Byrne* she was not a qualified individual. *See, e.g., Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998) (quoting *Tyndall v. Nat'l Educ. Ctrs. Inc.*, 31 F.3d 209, 213 (4th Cir.1994) ("An employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA.")). Accordingly, since Boileau could not attend work regularly she was not qualified under the ADA. Therefore, we affirm the district court's summary judgment decision as to Boileau's ADA claim.

III.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

**MERRITT, Circuit Judge, concurring.** I concur that we should affirm the judgment below for the reasons stated by the court's opinion and also for the reasons stated in the careful opinion of the district court. Appellant does not raise any substantial question on appeal. When an employee simply cannot perform the basic work required for her job, as in this case, neither the Family and Medical Leave Act nor the Americans with Disabilities Act is designed to require the employer to employ her anyway. This is a sad case in which the plaintiff's disease means that she can no longer perform her job as the head teller at the White House, Tennessee, Branch of the Capital Bank.